STATE EX REL. PAUL GUGLIELMO *v.* EDWARD D. BERGIN ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, JS.

Argued May 2—decided July 19, 1962

*Harry M. Albert,* with whom was *Archie L. Mendillo,* for the appellant (plaintiff).

*John D. Mahaney,* assistant corporation counsel, with whom were *Harry F. Spellman,* corporation counsel, and, on the brief, *Francis J. Butler,* for the appellees (defendants).

SHEA, J. The relator, hereinafter called the plaintiff, brought this action to compel the superintendent of the police department of the city of Waterbury to reinstate him to the rank and position of lieutenant and supervisor of the motor patrol division with the pay of captain. He also asked for an order directing the superintendent and the mayor of the city to sign and approve his pay rate card in accordance with his claimed rank and position. The defendant James R. Magner, who was superintendent of the police department, died after the commencement of the action. Joseph H. Guilfoile was appointed to fill the vacancy and, by stipulation of the parties, has been made a party defendant. The

plaintiff alleged that on January 27, 1960, he was wrongfully and without legal justification removed from his position and demoted to sergeant. The defendants denied this allegation and asserted, as a special defense, that the appointment of the plaintiff as a lieutenant on December 2, 1959, caused the number of lieutenants to exceed the number authorized by the board of aldermen and was in violation of law. The court rendered judgment for the defendants, and the plaintiff has appealed.

The finding, with such corrections as the plaintiff is entitled to have made, recites the following facts: From January 1, 1958, until midnight, December 31, 1959, Raymond E. Snyder was mayor of the city of Waterbury. He was succeeded in office by the defendant Edward D. Bergin on January 1, 1960. On December 2, 1959, the authorized number of lieutenants in the Waterbury police department was fourteen. Since 1948, however, the city budget had provided funds for one lieutenant in excess of the authorized number. Effective December 30, 1955, Domenic Mannello had been appointed by the board of police commissioners as the fifteenth lieutenant. This appointment was made despite the lack of any vacancy among the fourteen authorized lieutenants. On November 5, 1958, Chris Delaney had also been appointed as a lieutenant by the board although no vacancy, in fact, existed. Delaney was listed as the sixteenth lieutenant in the department, one in excess of the number provided for in the budget and two in excess of the number authorized by the board of aldermen. On December 2, 1959, the list of officers included the names of four captains and sixteen lieutenants. On that date, the board of police commissioners promoted, or attempted to promote, a number of officers. Lieuten-

ant Fred T. Sullivan was promoted to captain and immediately thereafter was promoted from captain to chief inspector of traffic. This position was created by the 1959 General Assembly. 29 Spec. Laws 325, No. 379. The law did not become effective until February 1, 1960, that is, after the expiration of the terms of Mayor Snyder and the police commissioners of his administration. See Waterbury Charter § 3331 (1957); 23 Spec. Laws 661, § 58. Nevertheless, Sullivan acted as, and received the pay of, chief inspector of traffic until December 31, 1959, when he was appointed deputy superintendent. At the meeting of December 2, 1959, Lieutenant Henry Byrnes was promoted to captain to succeed Sullivan. The promotions of Sullivan and Byrnes, together with the retirement of two other lieutenants, reduced the number of lieutenants to twelve. The names of Mannello and Delaney were included in the twelve, and both men were serving as lieutenants. On December 2, four men were appointed as lieutenants. The plaintiff was the last of the four to be appointed; he was also designated as supervisor of motor patrol. In December, 1948, the board of alderman had voted to approve the creation of a new position in the police department to be known as "superintendent of motor patrol and maintenance." In the order of appointment, the plaintiff became the sixteenth man on the list of lieutenants. On December 23, 1959, Lieutenant Natale Spadaro was appointed captain.

Shortly after the change in administration, the new mayor, the defendant Edward D. Bergin, requested the corporation counsel to give his opinion as to the roster of legal officers in the police department. Such a roster was prepared and presented on January 26 to the mayor, who sent it to

Superintendent Magner with instructions to make it the official roster of the department. In conformance with these instructions, the superintendent removed, reassigned and demoted a number of officers. The plaintiff's name was removed from the roster of lieutenants and placed on the list of sergeants. On the same day, Captain Spadaro was demoted from captain to lieutenant and was assigned by the superintendent as supervisor of motor patrol. From December 2, 1959, to January 27, 1960, the plaintiff received the pay of a captain, but since January 27, he has received the pay of a sergeant. Under the city charter the mayor is chairman ex officio of the board of police commissioners. Waterbury Charter § 3331 (1957); 23 Spec. Laws 661, § 58. The superintendent of police has the sole right to assign officers in the department. Waterbury Charter § 3334 (1957); 21 Spec. Laws 623, § 213.

The trial court concluded that the charter designates the complement of the police department, sets forth the powers and duties of the police commissioners and gives the superintendent the sole right to assign officers; that the board of aldermen does not have the right and power to create a separate and distinct rank of lieutenant and supervisor of motor patrol in the police department; that no such separate and distinct rank was legally created; that the appointment of the plaintiff to the rank of lieutenant made him the sixteenth lieutenant; that his claim is of a doubtful and contested nature; that his reinstatement as a lieutenant would involve the legality of the appointment or status of other officers and members of the police department who are not parties to this action; that his reinstatement might constitute a violation of the law because it

would bring about an increase in the authorized number of lieutenants; that the plaintiff has no clear legal right or claim to the rank of lieutenant; and that he was not entitled to a writ of mandamus.

The plaintiff's assignments of error consist of fifty-five paragraphs. Some are not specific, many are repetitious, and several overlap. They violate our rule. Practice Book § 408. We have tried to classify them to cover the real contentions of the plaintiff. He claims that he is a lieutenant appointed to a special classification as supervisor of motor patrol; that this is a special office which was created by the board of aldermen in December, 1948; that the plaintiff was appointed to succeed one who had retired from the office; that the plaintiff was improperly removed from the office; and that he is entitled to reinstatement.

The charter of the city of Waterbury provided, as of December, 1959, that the police department should consist of a superintendent, a deputy superintendent, a chief inspector, a deputy chief inspector, four captains and such number of lieutenants, sergeants, patrolmen and patrolwomen as the board of aldermen might prescribe from time to time. Waterbury Charter § 3332 (1957); 28 Spec. Laws 364, No. 277 (amended, as of Feb. 1, 1960, by 29 Spec. Laws 325, No. 379). Thus, the personnel of the department above the rank of lieutenant was definitely fixed by the charter. The number of lieutenants and of those holding rank below them was determined by the board of aldermen. The law did not authorize the board of aldermen to create new offices or new ranks. Similar restrictions prevailed in 1948. Waterbury Charter § 211 (Comp. 1946); 24 Spec. Laws 768, § 13. Thus, when the board of aldermen in 1948 voted to approve the creation of a

new position of "superintendent of motor patrol and maintenance," it did not create a new rank or office in the department. New offices in the department can be created only by the General Assembly or by amendment of the charter under the procedure outlined by the Home Rule Act. Public Acts 1957, No. 465 (General Statutes c. 99).

To determine the legal effect of the vote of the board of aldermen, we must examine the surrounding circumstances in the light of the provisions of the charter. In November, 1948, the board of police commissioners voted to request the board of aldermen to create in the police department "a position to be known as 'Superintendent of Motor Patrol and Maintenance,' with a salary scale to equal that of a Captain," and it was recommended that Lieutenant Joseph Pettit be promoted to this position. A copy of the vote was sent to the board of finance, which, in turn, referred it to the board of aldermen. On December 6, 1948, the board of aldermen acknowledged receipt of the communication, ordered it placed on file and approved the creation of the new position in the police department, to become effective January 1, 1949.

The language of the motion passed by the aldermen is particularly significant, viewed in the light of § 3333 of the charter. 21 Spec. Laws 623, § 212. This section provides that the board of police commissioners shall have the power of appointment and removal of the officers and members of the department, the power to fix, subject to the approval of the board of aldermen, the amount of compensation to be paid to each officer and member; and the power to make all needful rules and regulations for the government and control of the department. When the police commissioners voted in November,

1948, to request the board of aldermen to create the position of superintendent of motor patrol and maintenance, it also specified the salary and named the man who was to be placed in the position. The fact that the request of the commissioners was routed through the board of finance and not sent to the board of aldermen directly is explained by § 337 of the charter (21 Spec. Laws 570, § 39), which prohibits the board of aldermen from passing any resolution or vote requiring the expenditure of money until it has received from the board of finance a report as to whether there is money available for the purpose. Obviously, the purpose of the police commissioners was to create a place or post to which there could be assigned a lieutenant who would receive the pay of a captain. Under § 3333 of the charter (21 Spec. Laws 623, § 212), the commissioners could not authorize a captain's pay to a lieutenant without the approval of the aldermen. The aldermen could not act on the recommendation of the commissioners without a report from the board of finance. When the aldermen, having filed the communication from the police commissioners and the board of finance, voted to "approve" the "creation of the new position in the Police Department," they were simply approving the rate of compensation to be paid to any lieutenant who would be assigned in the police department to that position. It is particularly important to observe that the language creating the position was first used in the vote of the board of police commissioners. The intent and purpose of the entire proceeding, from its inception, was to designate a position to which a lieutenant in the police department would be assigned at the pay of a captain, if this rate of compensation was approved by the board of alder-

men. To such a position the board of aldermen had no authority to assign anyone. The charter, in § 3334, provides that the superintendent of police shall have the sole right to assign officers to their duties. 21 Spec. Laws 623, § 213. It is true, as the plaintiff claims, that William J. Roach, the superintendent, did not, from January 1, 1949, until his retirement on December 31, 1959, exercise his authority to assign an officer to supervise motor patrol. However, that fact, standing alone, did not deprive him of his legal authority to do so.

On December 2, 1959, when the plaintiff was appointed, there was no such separate and distinct rank or office in the police department as lieutenant and superintendent of motor patrol and maintenance, or, as termed by the plaintiff, lieutenant and supervisor of motor patrol. Nor was there a separate rank or office of supervisor of motor patrol. The claim of the plaintiff that he was appointed to a special office in the department to fill a vacancy caused by the retirement of another is without merit.

The plaintiff contends that, even though the board of aldermen could not legally establish a new position in the department, he was duly and properly appointed a lieutenant to fill the vacancy caused by the retirement of another. On December 2, 1959, the authorized number of lieutenants was fourteen. To establish a clear legal right to the rank of lieutenant, the plaintiff must show that he received a valid appointment on that day. The roster of the department listed sixteen men as lieutenants, and the plaintiff was the last of those who were appointed. Lieutenants rank in the order of their appointment. Waterbury Police Dept. Regs., p. 22 (1950). To assure the validity of his own appoint-

ment, the plaintiff has called into question the validity of the appointment and the status of other members of the department. The names of some of these men were on the list of lieutenants before the plaintiff was appointed; the names of others were added after his appointment. Some are still serving as lieutenants. None of these men have been made parties to this action, and their standing and rights should not be determined in this proceeding, where they have had no opportunity to appear and be heard. *State ex rel. Comstock* v. *Hempstead,* 83 Conn. 554, 561, 78 A. 442. Mandamus will issue on the request of one who has a complete and immediate legal right; it cannot and does not act on a doubtful and contested right. *Boyko* v. *Weiss,* 147 Conn. 183, 186, 158 A.2d 253; *Duane* v. *McDonald,* 41 Conn. 517, 520. The trial court did not err in refusing to order that the plaintiff be reinstated as lieutenant and supervisor of motor patrol.

There is no error.

In this opinion the other judges concurred.