## Dominic J. Carilli *v.* Pension Commission of the City of Hartford

King, C. J., Murphy, Alcorn, Shannon and House, Js.

1

Argued May 4—decided June 6, 1966

*Melvin S. Katz,* with whom, on the brief, were *I. Oscar Levine* and *Theodore B. Epstein,* for the appellant (plaintiff).

*Leo C. Mazotas,* assistant corporation counsel, for the appellee (defendant).

KING, C. J.   This action of mandamus seeks to compel the defendant pension commission, hereinafter referred to as the commission, to award the plaintiff a special disability retirement allowance in accordance with the plaintiff's claims as to the proper meaning and effect of subsection (f) of § 1 of No. 347 of the 1957 Special Acts, quoted in the footnote.[1]   The case has been beset by procedural difficulties.[2]   On January 7, 1964, in *Carilli* v. *Hartford,* 151 Conn. 703, 704, 197 A.2d 68, the attempted appeal by the plaintiff from the commission's denial of his claim for a disability allowance was dismissed for lack of jurisdiction because there was an absence of authority for an appeal from a decision of the commission.   Thereupon, this action

---

[1] "[28 Spec. Laws 423, § 1 (f)].   SPECIAL DISABILITY ALLOWANCE. Any member who suffers a permanent disability which does not prevent him from engaging in any gainful employment may nevertheless be eligible to receive a special disability retirement allowance if he has completed at least ten years of continuous service or if such disability is shown to the satisfaction of the pension commission to have arisen out of and in the course of his employment by the city, as defined by the workmen's compensation act, and if it is shown to the satisfaction of the pension commission that as a result of said disability the income which he can derive from gainful employment has been reduced at least ten per cent below the income he was earning at the time he incurred such disability. Such special disability retirement allowance may continue during the period of such reduced income.   The amount of the special disability retirement allowance shall be determined by the pension commission in a manner consistent with the determination of the disability retirement allowance; it shall not be less than ten dollars monthly nor more than one and two-thirds per cent of the reduction in income multiplied by the number of years of service unless the permanent disability arises out of and in the course of employment as defined in the workmen's compensation act, in which case it shall be not less than fifty per cent of the reduction in income."   Hartford Charter, c. 17, § 3 (f) (1961).

[2] See *Carilli* v. *Hartford,* 151 Conn. 719, 197 A.2d 936; s.c. 151 Conn. 720, 197 A.2d 937; s.c. 151 Conn. 743, 201 A.2d 669; s.c. 151 Conn. 745, 201 A.2d 670.

of mandamus was instituted. It was originally in the form of a reservation for advice, on stipulated facts, but this court, on June 4, 1964, quite properly refused to entertain the reservation. *Carilli* v. *Hartford*, 151 Conn. 745, 201 A.2d 670.

Thereafter, the parties did not change the stipulation but tried the action on the stipulated facts. Actually, the finding on appeal contains some facts not clearly incorporated in the stipulation. The source of the trial court's information as to these facts is not certain, but, since they are not challenged in the assignments of error, we have treated them as undisputed.

The facts as disclosed by the finding are relatively simple. On and before February 1, 1960, the plaintiff was an active regular member of the Hartford fire department and, as such, was a member of Hartford's municipal employees' retirement fund. The fund is administered by the defendant commission. On and before that date, the plaintiff also held a so-called "moonlighting" job with the United States post office department for which he received, in addition to his compensation from the city of Hartford for his services as a fireman, an average wage of $540 a month.

On February 1, 1960, the plaintiff suffered a heart attack, resulting in a permament, partial disability, which arose in the course of, and out of, the plaintiff's employment by the city, as defined in the Workmen's Compensation Act. See General Statutes § 31-275. As a result of the disability, the plaintiff is unable to continue his employment as an active member of the fire department. The plaintiff's average monthly base salary as a fireman, on February 1, 1960, was $424.66.

On December 1, 1960, the plaintiff, who had

returned to, and was performing, his post office job, applied for a special disability allowance under the provisions of subsection (f) of § 1 of No. 347 of the 1957 Special Acts, hereinbefore quoted. On April 17, 1961, his application was denied by the commission on the sole ground that the plaintiff "can derive, and in fact is, and has been since the date of his disability deriving, an income from gainful employment which is not ten (10) per cent below the income he was earning as a city of Hartford fireman at the time he incurred such disability."

It is the plaintiff's first claim that, under the quoted provisions of the 1957 special act, "the income he was earning at the time he incurred such disability" includes his earnings as a postal employee as well as his earnings as a fireman. The commission claims that only the plaintiff's earnings as a fireman are to be considered as "the income he was earning at the time he incurred such disability"; that he is still earning, through his post office job, more than the income he was earning from the city as a fireman; and that consequently his earnings are not 10 percent below, but in fact are greater than, the income he was earning from the city of Hartford at the time of the heart attack.

The answer requires an analysis of § 1 (a) and the quoted provisions of § 1 (f) of the 1957 special act on which the plaintiff bases his claim. Those provisions clearly require, as conditions precedent to the plaintiff's right to an allowance, the following: (1) The plaintiff must be a member of the municipal employees' retirement fund. (2) He must have suffered a permanent disability which precluded him from continuing to perform his ser-

vices as a fireman but which was not sufficiently severe entirely to preclude him from engaging in gainful employment. (3) (a) He must have completed at least ten years of continuous service for the city, or, in the alternative, (b) he must prove, to the satisfaction of the commission, that his disability arose out of and in the course of his employment by the city as defined by the Workmen's Compensation Act. (4) He must prove, to the satisfaction of the commission, that as a result of his disability the income which he can derive from gainful employment has been reduced at least 10 percent below the income he was earning at the time he incurred the disability.

There is no claim that the plaintiff has not brought himself within the terms of 1, 2 and 3 (b) of the foregoing conditions. The sole dispute is as to whether the plaintiff has brought himself within the terms of condition 4.

I.

As previously noted, the first and principal dispute is as to whether the phrase "income he was earning at the time he incurred such disability" refers to income earned from all sources, including the post office job, or merely to the income earned from the city of Hartford for services as a fireman. The 1957 special act does not contain any definition of the word "income" as used in the quoted phrase. We must therefore resort to interpretation to determine its meaning as used.

Article first, § 1, of the constitution of Connecticut provides that "no man or set of men are entitled to exclusive public emoluments or privileges from the community." We have held that "if legislation directs the granting of an emolument or privilege

to an individual or class without any purpose, expressed or apparent, to serve the public welfare thereby, the courts have a duty to declare such legislation unconstitutional" as in violation of § 1 of article first of the Connecticut constitution. *Warner* v. *Gabb,* 139 Conn. 310, 313, 93 A.2d 487, and cases cited.

To construe the word "income" as meaning income earned from all sources would base the amount of the disability allowance, which is obviously a form of pension, not on the service rendered the city of Hartford as a fireman, but on that service together with all other services rendered outside employers. Indeed, in this case, the income from the outside employment was greater than that from the employment by the city. Such a construction would result in the increase of the plaintiff's pension over that accorded other firemen similarily disabled, merely because of service rendered to an outside employer having no connection with the city. That result would be of extremely doubtful constitutionality. Indeed, the constitutionality of a disability allowance from municipal funds, computed on such a discriminatory basis, could be upheld, if at all, only if such a grant had an expressed or apparent purpose to serve the public welfare of the city of Hartford. Ibid. No such purpose is expressed in the 1957 special act nor, even if the act is construed as the plaintiff claims, is any such purpose apparent. The plaintiff claims that "moonlighting" by firemen is beneficial to the city, because it enables the city to retain their services at low wages. This claim is untenable, at least on this record. "Moonlighting" would appear to tend to diminish, rather than to increase, efficiency on the job as a fireman. The construction

contended for by the plaintiff is so unreasonably discriminatory as to be of very questionable constitutionality.

"Courts 'cannot impute to the Legislature an intent to pass an unconstitutional statute and a law should be construed, if it reasonably can be done, so as to make it valid.'" *State* v. *Doe,* 149 Conn. 216, 229, 178 A.2d 271 (quoting *State* v. *Muolo,* 119 Conn. 322, 330, 176 A. 401).

Quite apart from any question of constitutionality, the claim of the plaintiff that income earned from sources wholly unrelated to his employment by the city should be included in his pension base produces a patently unreasonable if not absurd result. Unearned income received by the plaintiff, such as interest on a savings bank account, would bear no less relationship to the plaintiff's duties as a fireman than would the earned income he received from his post office job. Where the literal language of a statute or act is ambiguous and open to multiple constructions, a construction which will accord a reasonable meaning, rather than an absurd one, should be preferred. See cases such as *Eddy* v. *Liquor Control Commission,* 138 Conn. 564, 566, 86 A.2d 867; *Guhring* v. *Gumpper,* 117 Conn. 548, 552, 169 A. 189.

The court correctly rejected the plaintiff's claim of law that the phrase "income he was earning at the time he incurred such disability" included income received from sources other than compensation for services as a fireman of the city of Hartford.

## II

Although it is not clearly raised in the assignments of error, the plaintiff has made the claim in

his brief that if the "income he was earning at the time he incurred such disability" is to be limited to the income he was receiving from the city of Hartford for his services as a fireman, then the income he was earning from the post office job should not be included by the commission in determining "the income which he can derive from gainful employment" after his disability. This claim, also, is without merit.

We are concerned with a case of permanent disability which is partial, that is, a disability which leaves the employee with a capacity to do some other gainful work, whether for the city of Hartford or for an outside employer. The rights of the plaintiff are accorded him, not under the Workmen's Compensation Act, but under a particular pension plan established under a special act applicable only to the city of Hartford.

It is clear that one of the objectives of condition 4 was to encourage, and indeed compel, a partially disabled employee to engage in other gainful employment to the extent of his reasonable potential capacity in the light of his partially disabled condition. In pursuance of that objective, the plaintiff was required to prove to the satisfaction of the commission that the income which he can, not merely the income which he does, derive from gainful employment is at least 10 percent below the income he was earning as a fireman when he incurred his disability. In other words, he must prove to the commission what he is able to derive from gainful employment, and it is this amount which is used by the commission in determining whether his income is at least 10 percent below the income he was earning from the city when he became disabled.

The words "can derive from gainful employment" in the 1957 special act refer to an earning potential or earning capacity. The fact that the plaintiff actually did earn $540 a month (and necessarily could earn at least that amount) as a postal employee would not, without more, establish his potential earning capacity.

The confusion with respect to this claim of the plaintiff, insofar as there is any confusion, arises from the fact that prior to the injury the plaintiff had outside employment and derived from it earnings greater than his earnings from the city. Had he not taken the postal job until after the injury, he could not reasonably claim that his earnings from that job should not be taken into consideration.

But the special act makes no reference to the time the outside gainful employment began, whether before or after the disability arose. Nor does the special act contain any hint of any limitation or restriction on the type or source of that gainful employment. There is no justification for this court to read into the special act the limitation and restriction claimed by the plaintiff.

Of course the plaintiff could reduce his actual outside earnings to nothing by simply refraining from undertaking any outside work at all. To obviate such a maneuver, he is required to prove to the commission what his potential outside earnings would be as distinguished from what his outside earnings actually are.

In this particular case, it so happens that the actual outside earnings of the plaintiff were greater than his earnings from the city prior to his disability. It follows that the amount of his potential earnings, as distinguished from his actual earnings,

becomes immaterial in the actual computation in this case.

The plaintiff, in this connection, places great reliance on the case of *Emerick* v. *Monaco & Sons Motor Sales, Inc.,* 145 Conn. 101, 105, 139 A.2d 156. That case involved a claim under the Workmen's Compensation Act and held that, where an employee worked on different shifts but during the same period of time at two separate jobs, for unrelated employers, and sustained a compensable injury on one job, in the computation of the amount he was able to earn after the accident, his earnings from the second job should not be considered but only his earnings from a job in substitution for the employment in the course of which he sustained the injury. Although at first blush the case would appear to be directly in point, actually it is not in point at all. It is concerned with the proper construction of our Workmen's Compensation Act. It is not concerned with the proper construction of a pension provision of a particular special act applicable only to the city of Hartford. This is true even though the pension is granted for a permanent, partial disability arising from an injury which, under the Workmen's Compensation Act, would be compensable. See General Statutes § 31-275 and cases such as *Porter* v. *New Haven,* 105 Conn. 394, 395, 135 A. 293. The disability pension allowance bears no similarity, in its manner of computation, in its amount or in its duration, to an award to a municipal employee under the Workmen's Compensation Act. See General Statutes § 31-308. Indeed, the plaintiff makes no claim that he is asserting any rights under that act. See cases such as *Manning* v. *State,* 123 Conn. 504, 514, 196 A. 777.

"Mandamus will issue at the request of one who has a complete and immediate legal right; it cannot and does not act on a doubtful and contested right." *State ex rel. Guglielmo* v. *Bergin,* 149 Conn. 631, 640, 183 A.2d 607. The plaintiff not only proved no clear right to the judgment in mandamus which he claimed but proved no right to any judgment at all.

There is no error.

In this opinion the other judges concurred.