F. Perry Wilson, Jr., et al. *v.* Connecticut
Product Development Corporation et al.

House, C. J., Cotter, Shapiro, Loiselle and MacDonald, Js.

Argued June 11—decision released August 13, 1974

*Andrew G. Brucker,* with whom, on the brief, was
*Richard S. Weinstein,* for the plaintiffs.

*John K. Jepson,* assistant attorney general, with whom, on the brief, was *Robert K. Killian,* attorney general, for the defendants.

COTTER, J. The plaintiffs seek a declaratory judgment to determine the constitutionality of Public Act No. 248, adopted by the 1972 General Assembly, now chapter 581, §§ 32-32 through 32-46 inclusive of the General Statutes. The plaintiffs bring this action in their capacity as citizens, residents, and taxpayers of Connecticut. The superior court (*Parskey, J.*) ordered that proper notice of the pendency of the action be given to all Connecticut citizens, residents, and taxpayers by appropriate newspaper publication.

Under 1972 Public Acts, No. 248, the state may provide direct financial assistance to private enterprises for the development and exploitation of products and inventions in Connecticut. The act establishes a quasi-public instrumentality designated the "Connecticut Product Development Corporation" (hereinafter referred to as "corporation" or "C.P.D.C.") to implement its provisions. General Statutes § 32-35. Its purpose is "to stimulate and encourage the development of new products within Connecticut by the infusion of financial aid for invention and innovation in situations where such financial aid would not otherwise be reasonably available from commercial sources . . . ." General Statutes § 32-39. The corporation determines on a case-by-case basis which applicants are eligible to receive financial assistance to develop qualifying products and projects after instituting a staff investigation and reviewing its report. Gen-

eral Statutes §§ 32-39, 32-40. The corporation's powers are enumerated in § 32-39, subsections (1) through (14) inclusive.

The creation of the C.P.D.C. resulted from proposals emanating from a study conducted by the governor's strike force for full employment. The strike force, authorized by executive order number 8 (November 16, 1971) was charged to prepare a legislative program that will facilitate full employment and economic development in Connecticut. In the summer of 1972, the strike force submitted an action plan designed to deal with what it described as "Connecticut's growing job crisis." The plan called for legislation creating seven wholly innovative programs to respond to the overall economic and employment problems facing Connecticut in the 1970's. The C.P.D.C. proposal was one of the recommended programs.

The act provides for funding by authorizing the state bond commission to issue bonds not exceeding an aggregate amount of ten million dollars to carry out its provisions. General Statutes § 32-41. The defendants Barnes Engineering Company and Kurtz Diecraft, Inc., applied to the C.P.D.C. for financial aid under the act; upon the application of the C.P.D.C., the defendant state bond commission authorized the issuance of bonds with which to provide the requested aid.

Upon a stipulation of facts by the parties, the superior court has reserved the matter for the advice of this court.[1]

---

[1] The questions upon which advice is desired, the answers to which are dispositive of this matter, are as follows:

"(1) Is Public Act 248 of the 1972 Legislative Session of the General Assembly of the State of Connecticut unconstitutional in that it entitles Kurtz Diecraft, Inc. and Barnes Engineering Com-

The plaintiffs have launched a constitutional attack upon the act. They claim, first, that contrary to the command of article first, § 1, of the Connecticut constitution that "no man or set of men are entitled to exclusive public emoluments or privileges from the community" it authorizes the use of public funds for a private benefit and not for a public purpose. In addition, they argue that even if the purpose of the act is sufficiently "public" in the constitutional sense, the standards which it articulates to limit the discretion granted to the officers of the C.P.D.C. are inadequate, such that the act delegates legislative power in a manner prohibited by article third, § 1, of the state constitution.

I

This court has long held that every presumption will be made in favor of the constitutionality of a legislative act. See, e.g., *Troiano* v. *Zoning Commission,* 155 Conn. 265, 269, 231 A.2d 536, and cases cited therein. Parties challenging the constitutionality of an act in a proceeding seeking declaratory relief have the burden of showing its invalidity beyond a reasonable doubt. *Aunt Hack Ridge Estates, Inc.* v. *Planning Commission,* 160 Conn. 109, 112, 273 A.2d 880; *Hardware Mutual Casualty Co.* v. *Premo,* 153 Conn. 465, 470, 217 A.2d 698.

pany, and other private individuals and corporations to exclusive public emoluments or privileges in violation of Section One of Article First of the Constitution of the State of Connecticut?

"(2) Is Public Act 248 of the 1972 Legislative Session of the General Assembly of the State of Connecticut unconstitutional in that the authority conferred by the Act upon the Connecticut Product Development Corporation is without adequate legislative standards and therefore is an unlawful delegation of legislative powers in violation of Section One of Article Third of the Constitution of the State of Connecticut?"

When the thrust of the challenge is that the act violates article first, § 1, of the state constitution, the plaintiffs have demonstrated such invalidity if they can show beyond a reasonable doubt that the legislation "directs the granting of an emolument or privilege to an individual or class without any purpose, expressed or apparent, to serve the public welfare thereby." *Warner* v. *Gabb,* 139 Conn. 310, 313, 93 A.2d 487; *Carilli* v. *Pension Commission,* 154 Conn. 1, 6–7, 220 A.2d 439.

Confusion as to the precise meaning of such concepts as "public purpose" has often thwarted a quick determination of whether a plaintiff has met his burden in an attack upon a legislative act under article first, § 1. The modern trend, both in Connecticut and in other states with similar constitutional provisions, has been to expand and construe broadly the meaning of "public purpose." *Barnes* v. *New Haven,* 140 Conn. 8, 15, 98 A.2d 523; *State ex rel. Wisconsin Dev. Authority* v. *Dammann,* 228 Wis. 147, 166; 227 N.W. 278, 280 N.W. 698; 63 Am. Jur. 2d, Public Funds, § 59. As one court has stated, "[a] slide-rule definition to determine public purpose for all time cannot be formulated; the concept expands with the population, economy, scientific knowledge, and changing conditions." *Mitchell* v. *Financing Authority,* 273 N.C. 137, 144, 159 S.E.2d 745. See also *Barnes* v. *New Haven,* supra, 15; *McSorley* v. *Fitzgerald,* 359 Pa. 264, 270, 59 A.2d 142. Generally, if an act will promote the welfare of the state, it serves a public purpose. *Tough* v. *Ives,* 162 Conn. 274, 292, 294 A.2d 67. In deciding whether an act serves such a purpose this court has traditionally vested the legislature with wide discretion and suggested that the latter's deter-

mination should not be reversed unless "manifestly and palpably incorrect." *Barnes* v. *New Haven, supra,* 15.[2]

The plaintiffs argue that any benefit to the public in the way of increased employment and tax revenue sought to be achieved through the creation and operation of the C.P.D.C. is too remote and speculative to survive what they believe to be the demands of article first, § 1. In support of this claim, they call attention to the fact that before the state can receive any return on the money it advances to finance the risk ventures contemplated by the act, those ventures must ultimately prove their success in the marketplace; yet they contend that such success is unlikely since the projects that are eligible for the state's assistance under the act are the kind which most businessmen would characterize as commercially unattractive. They also claim that although the act requires assurances by applicants that the benefits of increased employment and revenues remain in Connecticut, there is no statutory guarantee that such assurances will be enforced. Since the appropriation of public funds to support such projects will produce no direct benefit to the people of Connecticut, the plaintiffs con-

---

[2] The legislative enactment need not "contain a specific statement of the public purpose sought to be achieved by it." *Roan* v. *Connecticut Industrial Building Commission,* 150 Conn. 333, 339, 189 A.2d 399. Legislative findings, however, purporting to establish the existence of a public purpose should be considered when the text of the act itself incorporates these findings, as does General Statutes § 32-33. This is not to say, of course, that the legislature can, by mere fiat or finding, make "public" a truly "private" purpose so as to authorize an appropriation of public funds surreptitiously. Its findings and statements about what is or is not "public" cannot be binding upon the court. *Lyman* v. *Adorno,* 133 Conn. 511, 517, 52 A.2d 702.

clude the act must fail as an "exclusive public emolument" lacking a genuine "public purpose" contrary to the requirements of article first, § 1.

The presence of a direct benefit to the state from the expenditure of public funds is a useful factor in aiding the court's determination of whether a legislative act serves a public purpose. *Beach* v. *Bradstreet,* 85 Conn. 344, 350, 82 A. 1030; *Legat* v. *Adorno,* 138 Conn. 134, 142, 83 A.2d 185. But other factors serve a similar function. This court has found that an act serves a public purpose under article first, § 1, when it "promote[s] the welfare" of the state; *Tough* v. *Ives,* supra, 292; or when the "principal reason" for the appropriation is to benefit the public. *Roan* v. *Connecticut Industrial Building Commission,* 150 Conn. 333, 339, 189 A.2d 399. "The test of public use is not how the use is furnished but rather the right of the public to receive and enjoy its benefit." *Barnes* v. *New Haven,* supra, 15. The governor's strike force for full employment and the legislature which followed its recommendations in enacting 1972 Public Acts, No. 248, believed that the capital program envisioned as operating under the auspices of the C.P.D.C. would stimulate business in Connecticut by promoting the development of new kinds of products, technologies, and projects, which ordinarily do not attract conventional forms of financing. It was their considered opinion that the support of enterprises eligible for assistance under the act would result in an improved economy for the people of Connecticut by helping to keep new business in the state, to provide increased employment opportunities, and to establish a new source of public revenues. In claiming that the success of such enterprises is only "speculative," such that the ultimate benefits to be real-

ized by the state are "remote," the plaintiffs merely dispute the business judgment of the legislature; they have not demonstrated that in exercising its judgment the general assembly violated the principle underlying the constitutional requirement that the act serve a public purpose. The strong presumption of the act's constitutionality will not be overcome simply because the plaintiffs' economic forecasts differ from those of the legislature. *Schwartz* v. *Kelly,* 140 Conn. 176, 179, 99 A.2d 89, appeal dismissed, 346 U.S. 891, 74 S. Ct. 227, 98 L. Ed. 394; *Lyman* v. *Adorno,* 133 Conn. 511, 513–14, 52 A.2d 702.

The plaintiffs' claim that the act unlawfully entitles a limited class of persons to "exclusive public emoluments" falls short of its mark for another reason. They rightly suggest that the danger against which article first, § 1, seeks to protect the people of Connecticut is the possibility that the legislature will indulge in uncontrolled "giveaways" of public monies to specific persons or classes of individuals. See *Lyman* v. *Adorno,* supra, 515. Yet 1972 Public Acts, No. 248, counteracts this threat to the integrity of the public treasury. The act establishes a quasi-public corporation, the C.P.D.C., as a buffer between the legislature and the recipients of the financial support. The act seeks to benefit neither named individuals nor specific industries or enterprises, but, rather, types of projects, technologies, inventions, and products sponsored by persons whose assistance this corporation determines would most likely redound to the public good. The corporation is authorized to funnel out and withhold funds from those projects whose development it does not feel would fulfill the ultimate goals of the act, and it may enter into contractual arrange-

ments or agreements whereby it may obtain rights from or in an invention or product, or proceeds in exchange for the granting of financial aid. In addition, the state bond commission acts as a further restraining influence. Section 32-41 of the General Statutes provides that only the bond commission may authorize the issuance of bonds to fund the application in accordance with the provisions of § 3-20. Section 3-20 (g) of the General Statutes provides that the commission is empowered to authorize bonds whenever it "finds that the authorization of such bonds will be in the best interests of the state." These provisions in their totality comprise a system of barriers preventing any automatic flow of public funds to preferred persons or groups.[3]

The plaintiffs have failed to sustain the burden of overcoming the presumption in favor of the act's constitutionality by showing beyond a reasonable doubt that it entitles successful applicants to exclusive public emoluments without any purpose to serve the public welfare thereby. *Warner* v. *Gabb,* 139 Conn. 310, 313, 93 A.2d 487.

## II

The plaintiffs' second contention is that 1972 Public Acts, No. 248, does not contain adequate stand-

[3] The plaintiffs also assert that the act is unconstitutional because it denies to them the equal protection of the laws in violation of § 1 of article first of our constitution and the fourteenth amendment to the constitution of the United States. Section 1 of article first of our constitution has a meaning equivalent to that found in the fourteenth amendment to the constitution of the United States which prohibits the states from denying to any person the equal protection of the laws. *Barnes* v. *New Haven,* 140 Conn. 8, 14, 98 A.2d 523; *Lyman* v. *Adorno,* 133 Conn. 511, 515, 52 A.2d 702. Since the latter claim adds nothing to the former, we limit ourselves to the argument asserted under the Connecticut constitution. *State ex rel. Higgins* v. *Civil Service Commission,* 139 Conn. 102, 105–6, 90 A.2d 862.

ards to guide the discretion of the officers of the C.P.D.C. in their administration of the program; as a result, the plaintiffs claim that an unlawful delegation of the legislative authority has resulted in contravention of article third, § 1, of the Connecticut constitution.

For a legislative delegation of powers to an administrative instrumentality such as the C.P.D.C. to survive a constitutional attack, the statute in question must declare a legislative policy, establish primary standards or lay down an intelligible principle to which the instrumentality must conform. *Roan* v. *Connecticut Industrial Building Commission,* supra, 341. Within these limitations, the statute may authorize the instrumentality to supply the details of its operations by passing its own rules and regulations. *Kellems* v. *Brown,* 163 Conn. 478, 499, 313 A.2d 53; *State* v. *Stoddard,* 126 Conn. 623, 628, 13 A.2d 586.

As the complexity of economic and governmental conditions has increased over the years, courts have tended to approve ever broader standards to facilitate the operational functions of administrative agencies. *Forest Construction Co.* v. *Planning & Zoning Commission,* 155 Conn. 669, 679, 236 A.2d 917; note, 92 A.L.R. 400, 410. The modern trend holds that statutory standards are constitutionally sufficient so long as they are described as definitely as is reasonably practicable under the circumstances. *Velishka* v. *Nashua,* 99 N.H. 161, 167, 106 A.2d 571; *Belovsky* v. *Redevelopment Authority,* 357 Pa. 329, 342, 54 A.2d 277; *State* v. *Jackman,* 60 Wis. 2d 700, 705-6, 211 N.W. 480; 1 Am. Jur. 2d, Administrative Law, § 117.

The act makes clear to the officers of the C.P.D.C. that the objective sought to be attained through the venture capital program is "the creation of new products and industry in this state, resulting in increased employment and public revenues." General Statutes § 32-33. The powers of the C.P.D.C.'s officers to enter into venture agreements are further limited by the requirement that these agreements be only "with *persons doing business in Connecticut,* upon such terms and on such conditions as are *consistent with the purposes of this chapter,* for the advancement of financial aid to such persons for the development of *specific* products, procedures and techniques, to be *developed and produced in this state,* and to condition such agreements upon *contractual assurances* that the benefits of increasing employment and tax revenues shall remain in this state and shall accrue to it." (Emphasis added.) General Statutes § 32-39 (2). The "products" whose development the C.P.D.C. officers are authorized to encourage through the negotiation of venture arrangements are limited to those "products, devices, techniques or processes which have advanced beyond the theoretic stage and are readily capable of being, or have been, reduced to practice." General Statutes § 32-34 (5).

The act does not allow novices to pass judgment on the feasibility of the applications; rather, four of the six directors of the C.P.D.C. are specifically required to "be knowledgeable, and have favorable reputations for skill, knowledge and experience, in the areas of the development of technological invention." General Statutes § 32-35 (b). Further, the corporate officers can rule on any application only after they have considered a report on the merits of each application prepared by the corporation's

staff. Minimal requirements are provided for in the act for such staff reports: at the least, they must include "such facts about the company . . . as its history, wage standards, job opportunities, stability of employment, past and present financial condition and structure, pro-forma income statements, present and future markets and prospects, integrity of management as well as the feasibility of the proposed product and invention to be granted financial aid, including the state of development of such product as well as the likelihood of its commercial feasibility." General Statutes § 32-40.

In light of such extensive directions which the act has given to the C.P.D.C. officers as to how they are to carry out their functions, there is no merit in the plaintiffs' claim that the act fails to establish primary standards or guidelines on which the corporation can base its decisions whether to grant or deny applications.

In testing the constitutionality of a statute for the adequacy of its standards, the character of the administrative action which it authorizes must be considered. *Warren* v. *Marion County,* 222 Ore. 307, 353 P.2d 257. That observation is particularly appropriate in this case. The process whereby the C.P.D.C. determines which risk ventures are more likely to succeed in the marketplace than others must of necessity allow for substantial flexibility; this need is inherent in the very subject matter with which the corporation is empowered to deal under the act. This court has stated that it is unrealistic to demand detailed standards which are impractical or impossible. *Forest Construction Co.* v. *Planning & Zoning Commission,* supra, 679. To require that additional safeguards be built into 1972 Public Acts, No. 248, would be impractical.

Public Act No. 248 contains adequate standards to guide the officers of the C.P.D.C. in the exercise of their discretion to determine which applicants should receive public assistance. No improper delegation of legislative power has resulted in contravention of article third, § 1, of the Connecticut constitution.

Based upon the stipulated facts reserved for consideration by this court, we cannot find that the plaintiffs have sustained their burden of proving the unconstitutionality of 1972 Public Acts, No. 248. This is not to say, of course, that no remedies are available for any possible actions undertaken pursuant to the administration of the act, which may be unconstitutional or otherwise unlawful. But it is hardly necessary to point out that the act cannot be held invalid on the mere possibility that such actions will be taken. *Adams* v. *Rubinow*, 157 Conn. 150, 172, 251 A.2d 49.

We answer "No" to questions one and two of the reservation upon which advice is desired. We need not answer the remaining questions as they were not briefed.

No costs will be taxed in favor of either party.

In this opinion the other judges concurred.