[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case raises an issue of first impression concerning the extent of the obligation of local boards of education, pursuant to General Statutes § 10-281, to provide transportation services to private school students. The specific question is whether a local board of education must provide transportation services to town resident students at a private, nonprofit, CT Page 9117 religious school, during days when public schools are not in session. The Appellee, state board of education (hereinafter State) found that the obligation exists pursuant to § 10-281.
The parties are as follows. The Appellant is the Stafford board of education (hereinafter Stafford) empowered pursuant to General Statutes § 10-220 with the authority and responsibility for implementing the educational policies of the State of Connecticut in the Stafford Public Schools within the Town of Stafford. The Defendant-Appellee State board of education is an agency of the State of Connecticut within the meaning of General Statutes § 4-166(1). The individual Defendants-Appellees, Anthony Armelin and Lynda Schold (hereinafter "parents") are residents of the Town of Stafford, who have children attending St. Edward School. The St. Edward School is a private religiously affiliated, nonprofit school within the town of Stafford.
The Record reveals that the St. Edward School followed the same basic school year calendar as the Stafford public schools beginning at least as early as the 1984-1985 school year.
Transportation services essentially have consisted of school bus services between transportation points and schools. Stafford policies determine distance requirements for transportation. The St. Edward School students ride on the same buses as public school students (R. II.C., pp. 3, 5), subject to the same distance regulations (R. II.C., p. 137).
Stafford after announcing the 1992-1993 school year calendar subsequently amended it to delay the opening of school from August 31, 1994, until September 8, 1994. The delay was occasioned by building construction problems.
The St. Edward School kept the August 31, 1992 opening date and objected to a denial of transportation services for August 31, 1992 (R. II.A., pp. 5, 7, 8, 10, 12). The individual parents obtained a temporary injunction in Superior Court requiring Stafford to provide transportation services for September 1 through September 8, 1994.
Stafford refused to provide transportation services for the St. Edward School students on August 31, 1992, when Stafford public schools were not in session, and without a court injunction would have denied such services for a greater period CT Page 9118 (R. II.A., pp. 14, 11, 13, 9).
The 1993-1994 school year calendar for the Stafford public schools, followed by St. Edward School, set a spring vacation which lasted from April 18, 1994 through April 22, 1994. In order to reschedule days of school lost through snow cancellation days, the St. Edward School rescheduled school to be in session for April 18, 19 and 20, 1994. The Diocese of Norwich Catholic Schools Superintendent asked Stafford to provide transportation services for St. Edward School students during such period. Stafford public schools rescheduled lost snow days for a later time and remained closed for April 18 through April 22, 1994. Stafford denied transportation services to St. Edward School students for this April 1994 week (R. II.B., p. 4).
The individual Appellees requested a transportation hearing before the Stafford board of education by letter of September 30, 1994 (R. II.A., p. 15). The request alleged a violation of school accommodations under General Statutes § 10-186 and transportation services under § 10-281, with respect to the refusal to provide transportation for April 18, 19 and 20, 1994.
The hearing was held on October 25, 1994, as a transportation hearing pursuant to § 10-186. Stafford dismissed the complaints as moot in that the dates under dispute had already passed (R. III.C., pp. 1-3). The decision was voted on October 25, 1994, and formally transmitted to parents' legal counsel on November 17, 1994.
The parents appealed to the State pursuant to § 10-186
alleging a lack of transportation services by Stafford (R. III.B.). The parents and school board were notified of a hearing, before an attorney impartial hearing board, on December 13, 1994 (R. III.D.). The parties filed briefs on January 13, 1995, and the Acting Commissioner of Education extended until February 22, 1995, the date for the hearing officer's decision (R. III.E. and F.). The hearing officer's decision was filed on February 21, 1995, and was communicated to the parties by letter of February 27, 1995 (R. III.G. and H.).
The hearing officer's fifteen page decision concluded that the Stafford board of education must grant, pursuant to § 10-281, transportation services to students of St. Edward School on all days when it is in session, even if the Stafford public schools are closed. CT Page 9119
Stafford, on April 11, 1995 filed this appeal of the hearing officer's decision.
The Record was filed on July 14, 1995. The Plaintiff-Appellant filed its brief on October 18, 1995. The Appellee parents' brief was filed on January 23, 1996. The State board of education did not file a brief and waived its right to oral argument.
The case was argued on September 19, 1996.
The Appellant Stafford argues in its brief the following grounds for its appeal: (1) The State Board's decision is in excess of its statutory authority and constitutes an unwarranted exercise of authority; (2) The decision misinterprets applicable law regarding mootness and § 10-281, and represents a clearly erroneous view of the reliable probative and substantial evidence on the record; (3) The decision constitutes a violation of theFirst Amendment to the United States Constitution and Articles I and VII of the Connecticut Constitution. The arguments are set forth in Stafford's forty-nine page brief. All other issues raised in the appeal which were not briefed are viewed as abandoned. Collins v. Goldberg, 28 Conn. App. 733, 738 (1992).
A basic principle of administrative law is that the scope of the court's review of an agency's decision is very limited. General Statutes § 4-183(j) provides that "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact . . . The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." In order to obtain reversal of an agency's decision, the plaintiff must demonstrate that he suffered "material prejudice as a result of this alleged procedural deficiency." Jutkowitz v. Departmentof Health Services, 220 Conn. 86, 94 (1991).
Furthermore, "Judicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." Conn. Light Power Co. v. Dept. of Public UtilityCT Page 9120Control, 219 Conn. 51, 57-58 (1991). Similarly, "[w]ith regard to questions of fact, it is [not] the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency." Id. "The question is not whether the trial court would have reached the same conclusion but whether the record before the commission supports the action taken." Hospital of St. Raphael v. Commission on Hospitals Health Care, 182 Conn. 314, 318 (1980).
"Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act (General Statutes, c. 54, 4-166 through 4-189), and the scope of that review is very restricted . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the [administrative agency] . . . The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." (Citations and internal quotation marks omitted.) Board of Education v. Freedom of InformationCommission, 208 Conn. 442, 452 (1988).
Nevertheless, where "the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion." United Parcel Service, Inc. v.Administrator, Unemployment Compensation Act, 209 Conn. 381, 385
(1988).
The Appellant's argument alleging an excess of statutory authority is essentially as follows: Since Stafford decided the parents' appeal on the mootness ground the State could only address the mootness issue and was precluded from addressing the merits.
In support of this claim three cases are cited which are clearly distinguishable. Latham v. Jim and Joe GeneralContractors, 16 Conn. App. 138, 141 (1988), dealt with the circumscribed review powers of the workers' compensation review decision. The worker's compensation review division's authority was only: "[F]or the limited purpose of determining whether the CT Page 9121 finding should be corrected, or whether there was any evidence to support in law the conclusions reached" by the workers' compensation commissioner. When the commissioner dismissed the case on jurisdictional grounds the review commission could not address the merits. The other cases relied on by Appellant (NewHaven v. P.U.C., 165 Conn. 687, 727 (1974); and Krulikowski v.Polycast Corporation, 153 Conn. 661, 667-68 (1966)) were merely cited in Latham, supra, for the proposition that the court should not consider claims not raised on the record.
In this case the parents raised the specific issue of Stafford's obligation to transport their children to St. Edward School on days when the Stafford public Schools might be closed. The issue was the only claim of the parents and was discussed at length on the merits by Stafford at the hearing (R. II.C., p. 1-167).
In contrast to the limited scope of the workers' compensation review division, § 10-186(4) empowers the State board of education, acting through an impartial hearing board, to make affirmative orders in the event of a denial of accommodation. The procedure of expedited hearings and decisions set forth in §10-186 also indicate a policy of seeking a timely resolution of issues involving the education of children. Such a policy would have been frustrated by the impartial hearing board's limiting itself to the issue of mootness. Evidence and argument on the merits was presented before both the Stafford and State Boards of Education. The impartial hearing board was obligated under §10-186 to address the merits under this scenario.
Section 10-186 deals primarily with school attendance issues. Stafford's argument could just as easily be made if a child were denied attendance, and the local board of education decided the issue of whether the child was entitled to attend school was moot because the dates of denial of school attendance were in the past. That would constitute an absurd result, in contravention of the clear policy enumerated in § 10-186.
In a similar vein, Stafford argues that §§ 10-186 and10-281 do not provide for any prospective relief. Stafford contends that under the statute the parents can obtain no relief or enforcement of their rights under the statute. Stafford contends that compensatory damages are also unavailable. Once again, the remedial nature of §§ 10-186 and 10-281 to ensure accommodations to school children would be frustrated by such a CT Page 9122 constricted view of relief. "The objective of statutory construction is to give effect to the intended purpose of the legislature." Rose v. Freedom of Information Commission,221 Conn. 217, 225 (1992). "When statutes are remedial in nature . . . they dare to be liberally construed in favor of those whom the legislature intended to benefit.'" State v.Guckian, 27 Conn. App. 225, 244. Stafford's position ignores the fact that "[e]ducation in itself serves a public purpose."Snyder v. Newtown, 147 Conn. 374, 382 (1960), app. dismissed,365 U.S. 299 (1961). Stafford, like the State, "is under a duty to ignore the child's creed, but not its need." (Citation and internal quotation marks omitted.) Id., 388. Indeed, public transportation to private schools promotes the safety of the children while helping parents and legal guardians fulfill their responsibility to send their children to school under General Statutes § 10-184. Id.
Stafford also argues that what the State decision amounted to was a declaratory ruling, for which the appropriate procedure was not followed.
The State decided what was presented to it, a simple question of whether Stafford had transportation obligations to St. Edward School students on days Stafford public Schools were not in session.
Section 10-281 is specifically addressed to the transportation by local boards of education of nonprofit private school students. Section 10-281 is enforceable through the procedures set forth in §§ 10-186 and 10-187.
The determination of Stafford's obligation to transport St. Edward School students presented a contested case pursuant to General Statutes § 4-166(2). The "legal rights . . . of a party [the parents] are required by statute to be determined by an agency [board of education] after an opportunity for a hearing or in which a hearing is in fact held." General Statutes §4-166(2).
Stafford further asserts that the parents' claim was moot in that there was no actual controversy, and that the State decision is merely academic.
The record indicates that in the two successive school years preceding the State decision there had been specific disputes CT Page 9123 over the precise issue decided. In two successive years Stafford had denied transportation services to St. Edward School students, because of the different school calendars. The record reveals that members of the Stafford board indicated a strong position in favor of denying transportation services to St. Edward School students when public school was not in session. (See comments of Ms. Radway (R. II.C., p. 148).) The Stafford administration, through counsel, specifically argued "we assert to you that there is no obligation in this school system to provide transportation to St. Edward School on days when the Stafford public school system is not in session." (R. II.C., p. 10.) "And the issue before the board of education is whether the public school system has provided the same kind of transportation to the students that attend St. Edward school. . . ." (R. II.C., p. 106.) In closing argument the Stafford administration's counsel argued at length (R. II.C., pp. 142-144), that the administration had no obligation to transport St. Edward School students on days public school was not in session.
At oral argument of this appeal, counsel were unable to agree concerning whether this issue has reemerged in the succeeding academic years. The record establishes that the controversy has repeated itself in the two academic years preceding the decision. The parties remain firm in their conflicting opinions as to their statutory rights and obligations. The State board of education addressed an active controversy.
Stafford in its brief and at oral argument fails to articulate any prejudice (other than the result) from the State's addressing the merits of the dispute.
Stafford argues that §§ 10-186 and 10-281 contemplated no award of compensatory damages and that the parents are not entitled to a declaratory ruling. Stafford would have the court relegate these important expressions of legislative policy to unenforceable homilies disconnected from actual relief or import.
The parents and State board argue that though the issue of the specific days in dispute may be incapable of retroactive redress, the overriding issue must be addressed as a question "capable of repetition, yet evading review." The court finds that the dispute is not moot and the record presents an active controversy. The court agrees that, alternatively, this case would present a dispute "capable of repetition, yet evading review." CT Page 9124
Stafford criticizes the parents as dilatory in pursuing their appeal to the Stafford board; but the record refutes such a charge, and establishes the difficulty in fully litigating the issue as to specific dates.
The parents, when denied transportation in August of 1992, successfully obtained a temporary injunction providing transportation for all days but August 31, 1992. The request for permanent injunctive relief was dismissed because of the availability of an administrative remedy.
The dispute over April 18, 19 and 20, 1994, was not joined until March 16, 1994 (R. II.B., p. 4). A Month seems a duration "too short to be fully litigated." In Hartford Principals,Supervision Ass'n v. Shedd, 202 Conn. 492, 499 (1987), our Supreme Court set forth the two elements necessary for invocation of the doctrine of capable of repetition yet evading review. The elements are that the challenged action is of a duration too brief to be fully litigated prior to cessation or expiration, and that there is a reasonable expectation that the same complaining party would be subjected to the same action. Here, both incidents establish the brief time frame. Schedules were changed for various unanticipated legitimate reasons. Transportation was requested and denied close to the affected dates. The Stafford public school administration and board of education have given every indication that the St. Edward School students will, in the future, be denied transportation on every date Stafford public schools are not in session. Thus, this dispute is capable of repetition yet evading review.
As to the merits of the appeal, Stafford claims that the decision is erroneous pursuant to § 10-281. The resolution on the merits requires statutory construction of § 10-281 which provides in pertinent part: "Any . . . school district shall provide, for its children . . . attending non-public nonprofit schools therein, the same kind of transportation services provided for its children . . . attending public schools. . . ."
Stafford argues that the "same kind of transportation services" limits its obligation to provide bus service only on days the public schools are in session. The parents argue that "same kind" refers to the same types of buses, over the same bus routes and under the same general guidelines. . . ." CT Page 9125
In support of its interpretation Stafford presents the cost scenario if St. Edward School operates on different dates and/or an expanded calendar. The calendar or cost argument is expressly refuted by the clear language of the statute. "In no case shall a . . . school district be required to expend for transportation to any non-public school, in any one school year, a per pupil transportation expenditure greater than an amount double the local per pupil expenditure for public schools transportation during the last completed school year." Section 10-281. Thus, the statute contains a precise method of limiting Stafford's obligation for non-public school student transportation.
The implication of the limitation is that the obligation is not in all aspects coextensive with the public school schedule. If the legislature intended "same kind" to limit the obligation to the public school calendar, what is the logic to include a limitation of up to twice the per pupil expenditure for the previous year?
"As is true in every case involving the construction of a statute, [the] starting point must be the language employed by the legislature." Verdon v. Transamerica Ins. Co., 187 Conn. 363,366 (1982); State v. Torres, 206 Conn. 346, 354 (1988). The language of a statute must be considered as written and read as a whole. Groton v. Yankee Gas Services Co., 224 Conn. 675, 689
(1993). "[N]o part of a legislative enactment is to be treated as insignificant or unnecessary and there is a presumption of purpose behind every sentence, clause or phrase . . . and no word in a statute is to be treated as superfluous. Insofar as it is possible, the entire enactment is to be harmonized, each part made operative." (Citation and internal quotation marks omitted.)Keeny v. Fairfield Resources, Inc., 41 Conn. App. 120, 131
(1996). If the parameters as to "same kind" were as narrow as Stafford advocates, the limitation would be superfluous, or not as generous. The parents' construction to impute "same kind" as an obligation to use the same type of buses, routes and policies with respect to grades and walking distances is an appropriate construction.
The limited legislative history is consistent with and supportive of this construction. Senator Petroni in advocating this legislation stated: "This is a bill that will equalize the problem that confronts many school systems in the state. It's basically a question of getting all the children to school by public transportation. The bill deals with the safety of the CT Page 9126 young people whether they go to a public or private school." 14 S. Proc., Pt. 6, 1971 session, p. 2789.
Nothing contained in the statute or its history suggests the imposition of the limitation advocated by Stafford. To the contrary, the purpose (public transportation for non-public school students) and limitation on cost are far more generous than advocated by Stafford.
The final argument made by Stafford is that the State's decision is unconstitutional.
One constitutional claim relates to theFirst Amendment of the United States Constitution. "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." "It is settled law that in order to pass muster under the Establishment Clause, the statute in question, first, must reflect a clearly secular legislative purpose, second, must have a primary effect that neither advances nor inhibits religion, and, third, must avoid excessive government entanglement in religion. . . . If a legislative enactment fails any one part of the test, it must fail." (Citations and internal quotation marks omitted.) Caldor, Inc. v. Thornton, 191 Conn. 336,345 (1983), aff'd 472 U.S. 703 (1985).
The legislative history of § 10-281 establishes its secular purpose, the provision of public transportation to all schools public and private. The primary effect of transporting children to private non-profit schools is to facilitate their education through safe transportation. It neither advances or inhibits religion. The claim that excessive entanglement with religion would follow allowing St. Edward School to set its own calendar is not supported by the record. The State decision obligating Stafford to provide transportation services on all days St. Edward School is in session would result in less Stafford participation in St. Edward School scheduling. Also see the following cases allowing public aid to religious schools.Zobrest v. Catalina Foothills School Dist., 509 U.S. 1 (1993) (Establishment Clause does not prohibit a school district from providing a sign language interpreter for a deaf student attending a Roman Catholic high school); Mueller v. Allen,463 U.S. 388 (1983) (Minnesota law allowing taxpayers to deduct educational expenses for income tax purposes does not violate the Establishment Clause although most of the deductions were taken by parents of children attending sectarian schools); CommitteeCT Page 9127for Public Education v. Reagan, 444 U.S. 646 (1980) (Establishment Clause does not bar the use of public funds to reimburse religious and secular non-public schools for performing testing and reporting services); Board of Education v. Allen,392 U.S. 236 (1968) (where the state loaned secular textbooks to sectarian schoolchildren, the Establishment Clause is not violated); Everson v. Board of Education of Ewing, 330 U.S. 1
(1947) (Establishment Clause is not violated where, as part of a general program of reimbursing students for their transportation to and from school, the school district reimburses students attending Catholic schools).
In addition to ignoring the § 10-281 limitation on Stafford's financial obligation, Stafford also ignores theFirst Amendment's mandate that government[1] not interfere with the free exercise of religion. Requiring a religious school to conform to the public school calendar when Stafford does not require non-religious, out of town public schools to which it sends students to conform; raises a constitutional issue avoided by the State's sensible construction of § 10-281. (See R. II.C., p. 32.)
Stafford also avers that the State's decision violates article seventh of the constitution of the State of Connecticut, which provides in pertinent part: "No preference shall be given by law to any religious society or denomination in the state." Because article seventh and the Establishment Clause share a similar purpose, our courts analyze article seventh claims using the test applied in cases alleging violations of the Establishment Clause. Thus, for the reasons set forth previously, Stafford cannot prevail on this claim. Griswold Inn, Inc. v.State, 183 Conn. 552, 559 (1981).
Stafford also alleges a violation of Article I of the Connecticut Constitution. "All men when they form a social compact, are equal in rights, and no man or set of men are entitled to elusive public emoluments or privileges from the community." A challenge to a statute brought under article first, § 1, of the State Constitution will be successful if the plaintiff can show "that the legislation directs the granting of an emolument or privilege to an individual or class without any purpose, expressed or apparent, to serve the public welfare thereby. Warner v. Gabb, 139 Conn. 310, 313 . . . (1952); Carilliv. Pension Commission, 154 Conn. 1, 6-7 (1966) . . . Wilson v.Product Development Corp., 167 Conn. 111, 115 (1974)." Double ICT Page 9128Limited Partnership v. Glastonbury, 14 Conn. App. 77, 83, cert. denied, 208 Conn. 802 (1988). As stated previously, providing transportation to students, including those attending religious schools, serves the public's interest in the education and safety of our state's school children.
Section 10-281 was expressly enacted to ensure public transportation for all children whether attending public or private schools. All children are granted public transportation, thus none are granted any "exclusive public emolument."
The assertion that the possibility of St. Edward School students having additional school days and transportation services and thus a preference or exclusive emolument is not presented by the facts of this case. There is no evidence that St. Edward School is open more than the 180 days that Connecticut public schools are open for students. In the event that they were, it would seem that their education would be serving an important interest in education and subject to the reasonable limitations of § 10-281. In any event, the claim is only speculative based on this Record.
The legislature in its wisdom has adopted a policy of public transportation for all children, including many attending non-public, nonprofit, religious schools. The limitation of the local school district's obligation is based on the past year's per pupil expenditure. A spirit of cooperation in coordinating transportation services is encouraged by the expenditure limitation. Nothing in such scheme is offensive to either the State or Federal constitution.
The Appeal is dismissed.