## BURT C. WARNER *v.* GEORGE H. GABB

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued October 14—decided December 9, 1952

*Cornelius D. Shea,* for the plaintiff.

*Robert K. Killian,* with whom, on the brief, were *Samuel Gould* and *Frank A. Murphy,* for the defendant.

INGLIS, J. The plaintiff became a member of the Hartford fire department on October 1, 1919, after he had completed a term of military service in World War I. He served continuously therein until called for active duty in the United States navy on August 8, 1941. He was honorably released from the navy on October 17, 1945. Thereupon he returned to the Hartford fire department and continued as a member thereof until January 31, 1950, when he was compelled to retire because he had reached the age of sixty-five years. Special Act No. 394[1] was passed by the General Assembly in 1945. 24 Spec. Laws 776. It is conceded that, for pension purposes, this act entitled the plaintiff to add the term of his service in World War I to his actual service for the city. It

---

[1] "[Spec. Act No. 394] AN ACT CONCERNING RETIREMENT CREDIT FOR EMPLOYEES OF THE CITY OF HARTFORD WHO SERVED IN THE FIRST WORLD WAR. In determining length of service for the purposes of the retirement system of the city of Hartford as it applies to the members of the police and fire departments of that city, the length of service of the personnel of those departments who are members of said departments on July 1, 1945, shall be deemed to include their war service during the first world war, even though said members of said police and fire departments may not have been employed by the city of Hartford at the time of their participation in said war."

is likewise conceded that, in accordance with §§ 2-54 and 2-56 of the Hartford Charter and General Ordinances, 1949 (enacted in 1945) he, like every other city employee, is also entitled to have included the time during which he was in military service during World War II. He claims that by reason of Special Act No. 281[1] enacted in 1949 (25 Spec. Laws 1021) he is entitled to an additional credit of one month for each month of his service in the armed forces during World War II. The defendant has denied this claim, taking the position that Special Act No. 281 is invalid. The question reserved for the advice of this court is (a) whether that act is valid or (b) whether the computation of service time under it "would constitute exclusive emoluments or privileges from the community to the plaintiff or a group of policemen and firemen based upon no reasonable classification."

The effect of Special Act No. 281 is to put into a class by themselves those members of the police and fire departments of the city of Hartford who are veterans of World War II and who were members of those departments when they entered military service. It segregates them from, and prefers them to, not only veterans who are employed by the city in other departments but also all other employees in the police and fire departments even though they are

---

[1] "[Spec. Act No. 281] AN ACT CONCERNING RETIREMENT CREDIT FOR EMPLOYEES OF THE CITY OF HARTFORD WHO SERVED IN BOTH WORLD WARS. Number 394 of the special acts of 1945 is amended by adding thereto the following: In determining length of service for the purposes of said retirement system as it applies to members of the police and fire departments who served in World War II, the length of service of the personnel of those departments who were members of said departments when they entered war service shall be deemed to include accredited city pension time plus an additional month for each month of such war service."

veterans of World War I. Indeed, it prefers those in question to other World War II veterans in the police and fire departments who had not been serving in those departments before they entered military service. Moreover, inasmuch as it increases the retirement pay which those favored are to receive by adding to their term of service for the computation thereof, it directs the expenditure of public funds.

The constitution of this state, article first, § 1, declares "That all men when they form a social compact, are equal in rights; and that no man, or set of men are entitled to exclusive public emoluments or privileges from the community." Legislation which grants to a limited class emoluments or privileges greater than those allowed to the public at large is, of course, not necessarily violative of the constitution. If such a grant serves a public purpose, the fact that it is so limited does not render it invalid. *Lyman* v. *Adorno,* 133 Conn. 511, 516, 52 A.2d 702. Whether it does serve such a purpose rests in the sound judgment of the legislature, and the courts should not override the legislature's conclusion if that can be supported on any reasonable ground. *Lyman* v. *Adorno,* supra, 514; *Murphy, Inc.* v. *Westport,* 131 Conn. 292, 304, 40 A.2d 177; *State* v. *Bassett,* 100 Conn. 430, 433, 123 A. 842; *Beach* v. *Bradstreet,* 85 Conn. 344, 350, 82 A. 1030, and cases cited. On the other hand, if legislation directs the granting of an emolument or privilege to an individual or class without any purpose, expressed or apparent, to serve the public welfare thereby, the courts have a duty to declare such legislation unconstitutional.

In line with the principles just stated, it is incumbent upon us to inquire what purpose the General Assembly could reasonably have been seeking to

serve in enacting in 1949 Special Act No. 281. We are committed to the proposition that the payment of public funds to veterans generally is not violative of the constitutional provision, because such payment serves to promote the public welfare by encouraging patriotism. *Lyman* v. *Adorno,* supra, 518; *Walsh* v. *Jenks,* 135 Conn. 210, 221, 62 A.2d 773. The act now before us, however, does not benefit veterans generally. It provides an emolument for a very small group. For that reason it cannot be sustained on the theory that the purpose of the legislature in enacting it was to promote patriotism.

It is to be borne in mind that the special act in question was adopted as a portion of the legislation relating to the retirement of policemen and firemen of the city of Hartford. The intended effect of that legislation is, or may well be, threefold: First, the assurance of retirement pay facilitates recruitment because it makes the job more attractive. Second, it furnishes a sense of security to the fireman or policeman while he is in the service of the city and thereby increases his efficiency. Third, it tends to prevent a rapid turnover of personnel in the departments by inducing the men to hold their positions until they reach retirement age. These purposes are public purposes. The only question is whether the provisions of Special Act No. 281 giving special treatment to veterans of World War II are reasonably designed to further them.

It is well recognized that when a piece of legislation treats one class of persons differently from another there must be " 'some natural and substantial difference germane to the subject and purposes of the legislation between those within the class included and those whom it leaves untouched.' " *State* v. *Cullum,* 110 Conn. 291, 295, 147 A. 804; *State ex*

*rel. Higgins* v. *Civil Service Commission,* 139 Conn. 102, 107, 90 A.2d 862; *Franco* v. *New Haven,* 133 Conn. 544, 549, 52 A.2d 866; *Lyman* v. *Adorno,* supra, 521. The question in the case, therefore, comes down to this: Is the discrimination made by Special Act No. 281 in favor of veterans of World War II who were members of the police and fire departments before they entered service based on some natural and substantial difference existing between them and other members of those departments who are World War II veterans but who were not employed in those departments before they entered military service—a difference germane to the subject and purposes of the retirement legislation?

It may well be that men who have served in the armed forces of the country have thereby demonstrated that they possess qualities of valor, loyalty, initiative and obedience to discipline which peculiarly fit them for public service. See *State ex rel. Higgins* v. *Civil Service Commission,* supra, 109; *Commonwealth ex rel. Graham* v. *Schmid,* 333 Pa. 568, 573, 3 A.2d 701. Such a consideration might be sufficient to warrant legislation giving them a preference over nonveterans in the amount of their retirement pay, as an inducement to them to enter public service. The preference granted by the special act in question, however, is not of veterans over nonveterans. As already pointed out, the act makes a distinction among World War II veterans themselves. It prefers those who were in the police or fire departments of the city before they entered military service to those who were not. The granting of such a preference is of no substantial aid in procuring better qualified personnel in the city's employ. It certainly offers no inducement to World War II veterans generally either to undertake such

employment or to remain in it. The most that might be said for it is that it might induce some man who had been in the police or fire department before his war experience to return after he completed his military service. It still is true, however, that, in general, his military experience has done no more to fit him for police or fire work than the military service of another veteran has done to fit the latter for such duties. It may be true that the former's previous police or fire department experience has made him temporarily more desirable, but by the time the two men have reached the age of retirement they will have had, substantially, an equal amount of experience in police or fire work. Over the years, therefore, the personnel of the department will not be improved by the re-enlisting or retention of the first over what it will be by the enlisting or retention of the second. On the whole, if we bear in mind that the purpose of the legislation of which Special Act No. 281 is a part is to procure and retain a better personnel in the two departments, it is clear that the preference of World War II veterans who were members of the departments before they entered military service over World War II veterans who were new to the departments is not germane to that purpose. The difference between the two classes is too nebulous to afford a reasonable basis for the difference in the treatment of them. For that reason the special act is unconstitutional.

The Superior Court is advised that Special Act No. 281 does violate the constitutional prohibition against the granting of exclusive public emoluments or privileges to an individual or a class of individuals and that it is invalid.

No costs will be taxed in this court to either party.

In this opinion the other judges concurred.