[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO DISMISS
The plaintiff, the Estate of Rebecca Albair brought by Peter Hirschl, administrator, filed a notice of claim, pursuant to General Statutes § 4-147,[1] on October 29, 1992, with the claims commissioner. The notice alleged negligent medical treatment by the state of Connecticut, John Dempsey Hospital, including the improper placement of a draining tube, which resulted in the puncture of the lung and the death of Rebecca Albair, then approximately two months old. (See Defendant Exhibit C, Claims Commissioner's Decision of December 8, 1995 ("Decision"), pp. 1-2; Complaint, ¶¶ 7-10.) The notice sought damages in excess of $1,000,000 and permission to sue the state. (See Defendant Exhibit C, Decision, p. 1.) On June 29, 1995, the plaintiff filed a request for right to sue, pursuant to General Statutes § 4-160,[2] "supported by documentary evidence, deposition excerpts and [plaintiff's][3] expert (Dr. Carlton Werne) Case Review." (See Defendant Exhibit C, Decision, p. 1.)[4]
The state of Connecticut, John Dempsey Hospital filed an opposition to the plaintiff's request for permission to sue the state on October 12, 1995. (Memorandum of Law in Support of Defendant's Motion to Dismiss, pp. 2-3.) The plaintiff then filed a rebuttal to the opposition. (See Memorandum of Law in Support of Defendant's Motion to Dismiss, p. 5.)
On November 12, 1995, the claims commissioner held a hearing on the plaintiff's request to sue. The plaintiff's request to sue was denied on December 8, 1995. The claims commissioner's decision indicated that the plaintiff failed to meet its burden in demonstrating that the state caused its injury. The basis for this finding was a determination that the plaintiff's expert, Dr. Werne, would not be competent to testify at a malpractice trial against a private person because he was not a "similar health CT Page 1717 care provider" as defined under General Statutes §52-184c,[5] and thus was unable to testify as to the prevailing professional standard of care. (See Defendant Exhibit C, Decision, p. 7; Memorandum of Law in Support of Defendant's Motion to Dismiss, p. 4.)
The claims commissioner denied the plaintiff's request for clarification of the December 8, 1995 decision. (See Memorandum of Law in Support of Defendant's Motion to Dismiss, p. 4.)
On February 19, 1996, the plaintiff petitioned the General Assembly to reject the claims commissioner's decision and grant the plaintiff permission to sue the state pursuant to General Statutes § 4-159.[6] A public hearing on this petition was held on February 23, 1996 before the Judiciary Committee. (See Memorandum of Law in Support of Defendant's Motion to Dismiss, p. 5.)
In April 1996, by Substitute House Joint Resolution No. 3, the plaintiff was granted permission to sue the state. (See Memorandum of Law in Support of Defendant's Motion to Dismiss, p. 6; Complaint, ¶ 2; Complaint, Exhibit A, Substitute House Joint Resolution No. 3.) The General Assembly based its decision on an understanding that (1) the claims commissioner improperly found as a matter of law that the plaintiff's expert, Dr. Werne, was not a qualified expert under General Statutes § 52-184c; and (2) General Statutes § 4-160 should be liberally construed "to mean that a claimant need only show that it might prevail against a private person, not that it would [prevail]." (Memorandum of Law in Support of Defendant's Motion to Dismiss, p. 7. See Defendant Exhibit F, 39 H. Proc., Pt. 2, 1996 Sess., pp. 654-59, remarks of Rep. Radcliffe.)
The plaintiff brought this single count complaint against the defendant, the State of Connecticut, John Dempsey Hospital, on September 25, 1996, sounding in medical malpractice.
The defendant filed a motion to dismiss for lack of subject matter jurisdiction on November 26, 1996, accompanied by a supporting memorandum of law. The defendant argues that the special act of the General Assembly giving the plaintiff permission to sue the state is an unconstitutional exclusive public emolument, proscribed by Article 1, § 1 of the Connecticut Constitution. The plaintiff filed an objection to this motion to dismiss on December 13, 1996. CT Page 1718
A motion to dismiss shall be used to attack subject matter jurisdiction. See Practice Book § 143; Knipple v. VikingCommunications, 236 Conn. 602, 612 n. 3, 674 A.2d 426 (1996). "When the constitutionality of a statute implicates the jurisdiction of the court . . . a motion to dismiss may properly serve as a vehicle for presenting such an issue." Chotkowski v.State, 13 Conn. 13, 19 n. 8, 566 A.2d 419 (1989). "[T]he court, in deciding a motion to dismiss must consider the allegations of the complaint in their most favorable light." (Internal quotation marks omitted.) Savage v. Aronson, 214 Conn. 256, 264,571 A.2d 696 (1990).
The Superior Court does not have jurisdiction to review decisions of the claims commissioner. "The commissioner of claims performs a legislative function directly reviewable only by the General Assembly." Circle Lanes of Fairfield. Inc. v. Fay,195 Conn. 534, 541, 489 A.2d 363 (1985). See also Cooper v. Delta ChiHousing Corp., 41 Conn. App. 61, 64, 674 A.2d 858 (1996); Wagnerv. Frankel, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 512852 (December 30, 1992, Wagner, J.).
This court does, however, have jurisdiction to review the constitutionality of special acts of the General Assembly. See, e.g., Merly v. State, 211 Conn. 199, 558 A.2d 977 (1989);Chotkowski v. State, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 461509 (January 22, 1996, Fineberg, J.) (holding that the superior court even has jurisdiction to review special acts promulgated under General Statutes § 4-148 (b), despite the statute's express language, stating, "[s]uch finding [by special act of the general assembly] shall not be subject to review by the superior court").
"Constitutional issues are not considered unless absolutely necessary to the decision of a case . . . or unless sufficient public interest warrants such a review." (Citation omitted.)Chotkowski v. State, 213 Conn. 13, 16-17, 566 A.2d 419 (1989).
In the present case, the constitutionality of the joint resolution granting the plaintiff permission to sue the state is dispositive to the outcome of the present motion to dismiss. Accordingly, this court must address the defendant's argument that House Joint Resolution No. 3 grants the plaintiff an exclusive public emolument in violation of article first, § 1 CT Page 1719 of the Connecticut Constitution.
Article first, § 1, of the Connecticut Constitution reads: "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community."
"[The Connecticut Supreme Court] ha[s] construed the provision of article first, § 1, prohibiting exclusive public emoluments or privileges to apply to legislation preferring certain individuals over others when wholly unrelated to the public interest. No enactment creating a preference can withstand constitutional attack if the sole objective of the General Assembly is to grant personal gain or advantage to an individual. Its validity is contingent, at least in part, upon its furthering a public purpose; if enacted with that end in view, legislation can be sustained even though it may incidentally confer a direct benefit upon an individual or a class. Only if an act serves somepublic purpose can it be constitutionally sufficient." (Citations omitted; emphasis added; internal quotation marks omitted.) Merlyv. State, 211 Conn. 199, 212-13, 558 A.2d 977 (1989). See alsoFennell v. City of Hartford, 238 Conn. 809, 828, 681 A.2d 934
(1996), citing Warner v. Gabb, 139 Conn. 310, 313, 93 A.2d 487
(1952) ("[I]f legislation directs the granting of an emolument or privilege to an individual or class without any purpose, expressed or apparent, to serve the public welfare thereby, the courts have a duty to declare such legislation unconstitutional.").
Therefore, the constitutionality of the special act at issue in the present case hinges on whether the special act serves some public purpose.
"The modern trend, both in Connecticut and in other states with similar constitutional provisions, has been to expand and construe broadly the meaning of `public purpose' . . . [T]he concept expands with the population, economy, scientific knowledge, and changing conditions . . . Generally, if an act will promote the welfare of the state, it serves a public purpose. In deciding whether an act serves such a purpose this court has traditionally vested the legislature with wide discretion and suggested the latter's determination should not be reversed unless manifestly and palpably incorrect." (Citations omitted; internal quotation marks omitted.) Wilson v. Conn.Product Development Corp., 167 Conn. 111, 115, 355 A.2d 72
CT Page 1720 (1974). See also Warner v. Gabb, supra, 139 Conn. 313 ("Whether [an Act] does serve such a purpose rests in the sound judgment of the legislature, and the courts should not override the legislature's conclusion if it can be supported on any reasonableground.") (Emphasis added).
Given the liberal construction of the term "public purpose" and the deference given to the legislature's decisions, this court finds that the General Assembly's underlying purpose in granting the plaintiff permission to sue in the present case, i.e., the fact that the claims commissioner exceeded his authority under General Statutes § 4-160 by inquiring into the qualifications of the plaintiff's expert, serves a public purpose. Specifically, House Joint Resolution No. 3 serves to limit the claims commissioner's inquiry, in the present and future cases, to the sufficiency of a claim, or in the statute's language, a determination of whether a "cognizable cause of action exists by which the State, like an individual, could be liable." (Emphasis added.) General Statutes § 4-160. The public purpose behind the present special act is not merely "to see that justice is done in this particular case." Maysonet v.Hartford Housing Authority, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 545863 (December 4, 1996, Lavine, J., 18 Conn. L. Rptr. 346) (also providing an excellent review of former cases raising constitutional challenges to special acts promulgated under General Statutes § 4-160).
The fact that the General Assembly has not specifically stated the public purpose behind House Joint Resolution No. 3 is immaterial. "[A legislative enactment] is not unconstitutional by reason of the fact that the purpose is not spelled out with clarion specificity." Roan v. Conn. Industrial Building Comm.,150 Conn. 333, 340, 189 A.2d 399 (1963). Likewise, just because this special act may only impact the limited class of persons with pending medical malpractice claims before the claims commissioner is also irrelevant. See Warner v. Gabb, supra,139 Conn. 313 ("Legislation which grants to a limited class emoluments or privileges greater than those allowed to the public at large is, of course, not necessarily violative of the constitution. If such a grant serves a public purpose, the fact that it is so limited does not render it invalid.").
Accordingly, in light of the finding of a public purpose behind the enactment of House Joint Resolution No. 3 granting the CT Page 1721 plaintiff permission to sue, the defendant's motion to dismiss the plaintiff's complaint is denied.
Mary R. Hennessey, Judge