[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE DEFENDANT'S MOTION TO DISMISS #107
The plaintiff has brought suit against the State of Connecticut, alleging to have suffered serious injuries as the result of the defendant's common law negligence in failing to remedy a defective condition upon a highway overpass, or, in the alternative, its creation and/or maintenance of a nuisance in this place. This memorandum of decision addresses the motion to dismiss brought by the defendant State of Connecticut under date of July 16, 1999, upon its claim that the court lacks jurisdiction over the subject matter of this action (#107). The defendant first asserts that the legislative act permitting the bringing of suit in this case fails to comply with General Statutes § 4-159, it constitutes an ineffective waiver of the applicable defense of sovereign immunity. Second, the defendant argues that this legislative act is invalid in that it presents an exclusive public emolument barred by Article first, Sec. 1 of the Connecticut Constitution. Memorandum of Law in Support of Defendant's Motion to Dismiss, dated July 16, 1999 (#107). The plaintiff has objected, countering that the General Assembly unanimously voted to waive sovereign immunity in this matter, properly authorizing her to institute and prosecute her claim for injuries against the state. Plaintiff's Memorandum of Law on Objection to Defendant's Motion to Dismiss, dated January 19, 2000 (#108).
As is required by Practice Book § 10-31, the parties have filed timely memoranda in support of their positions on this motion. The court CT Page 7525 has also been provided with the legislative history relating to the act at issue, entitled Resolution concerning the Recommendation of the Claims Commissioner with regard to the Claims of Marcy Vogel and James Vogel, Substitute House Joint Resolution No. 47 (SHJR-47).[1] See Defendant's Notice of Filing, dated May 1, 2000. After hearing and due consideration, for the reasons set forth below, the court finds this matter in favor of the plaintiff, and accordingly denies the defendant's motion to dismiss.
 I FACTUAL HISTORY
The following discussion of the history of this matter is necessary for disposition of the matters before this court.
The litigation arises from an incident which the complaint alleges to have occurred at approximately 9:30 pm on January 7, 1991, when the plaintiff drove her automobile on Interstate 395, beneath an overpass structure which was possessed and controlled by the defendant. At that time and place, a large boulder was dropped from the unprotected overpass onto the plaintiff's vehicle, crashing through the windshield, violently striking her face, causing her to lose control of her vehicle and to sustain serious, permanent personal injuries. Complaint dated March 26, 1999. The complaint presents two counts: the first count is grounded in common law negligence, asserting that notwithstanding due notice, the defendant's agents and employees failed to take due and reasonable steps to screen the overpass, to prevent such incidents from occurring; the second count sounds in public nuisance, alleging, inter alia, that the defendant state created and/or maintained the dangerous conditions at issue.
The parties generally agree that prior to the institution of the present action, the plaintiff had filed suit against the defendant based upon General Statutes § 13a-144, "the Defective Highway Statute," alleging the state's failure to protect her from the known danger presented by the non-screened overpass. Vogel v. Frankel, Superior Court, Docket No. CV91-0099084, judicial district of New London at Norwich (Nov. 5, 1993, Hendel, J.). The defendant had submitted a motion for summary judgment, claiming that as a matter of law, it could not be liable for acts or omissions of a third party responsible for discharging the boulder. This motion was granted in favor of the state. Id. Thereafter, the plaintiff applied to the Claims Commissioner for permission to sue the state. The defendant initially moved to dismiss the claim, alleging that its allegations fell within the ambit of §13a-144. This motion was denied. Marcy Vogel James Vogel, Office of the CT Page 7526 Claims Commissioner, Claim Numbers 12793, 12794 (June 29, 1995,Butterly, Comm.). The defendant submitted a second motion to dismiss, again arguing that the state is protected by § 13a-144. This motion, as well, was denied. Marcy Vogel James Vogel, Office of the Claims Commissioner, Claim Numbers 12793, 12794 (Jan. 30, 1996, Smith, Comm.). After a formal hearing on the issue of liability, the commissioner reversed his ruling finding § 13a-144 inapplicable, concluded that the statute barred any other direct action, and dismissed the plaintiff's claims. Marcy Vogel James Vogel, Office of the Claims Commissioner, Claim Numbers 12793, 12794 (Dec. 5, 1997, Smith, Comm.).
This matter was next addressed by the General Assembly, upon consideration of SHJR-47, a Resolution Concerning the Recommendation of the Claims Commissioner with regard to the Claims of Marcy Vogel and James Vogel.[2] Introducing the Joint Committee's Favorable Report and adoption of the resolution, Representative Lawler cogently explained the Judiciary Committee's recommendation to "reject the recommendation of the Claims Commissioner and allow the Vogels to bring a lawsuit in their own names against the state of Connecticut. In this particular case, Mr. Speaker, a rock was hurled from a bridge maintained by the State of Connecticut Department of Transportation. It went through the windshield of a car very seriously injuring Marcy Vogel . . . In this particularcase, Mr. Speaker, the State apparently had received a number of warningsfrom town residents about installing a fence which would protect fromobjects being thrown from the bridge onto cars passing underneath. We arenot recommending that a particular award be made or that either party winthe lawsuit. This recommendation simply would allow them to bring a suitjust as anyone else could bring a suit under similar circumstances [were]it not the state is the defendant." (Emphasis added.) SHJR-47 Proc., Pt. April 8, 1998 Sess., p. 000934-5. Additionally, Representative Sawyer remarked, "In Marcy Vogel's case, the State had known ahead of time thatthis is a particularly dangerous area. There had been numerous accidentsahead of time. She was able to present a time line showing that there were these previous accidents. After she was so severely injured and hospitalized . . . the State, within three weeks of her accident, had made sure that there was a fence procured and put up so that it would not happen in the future. Mr. Speaker, because of the severity of thissituation, I would ask that the Chamber support this action." (Emphasis added.) Id., p. 00935. Additional relevant historical information was related by the plaintiff and her counsel at the Judiciary Committee session held February 23, 1998.[3] After consideration, the resolution was adopted by unanimous vote on April 8, 1998.
Thereafter, under date of March 26, 1999, the plaintiff submitted the complaint which is at issue. Unlike the complaint in Vogel v. Frankel, Docket No. CV91-0099084, the pending action is based on common law themes CT Page 7527 of negligence and public nuisance, without reference to § 13a-144. This complaint also contains specific reference to SHJR-47, which granted the plaintiff permission to sue the state of Connecticut. Complaint dated March 26, 1999, First Count ¶ 13; Second Count ¶ 15.
 II PROCEDURAL ISSUES RELATING TO THE MOTION TO DISMISS
In analyzing the issues raised by the parties, the court has observed the legal principles generally applicable to a motion to dismiss. It is axiomatic that "[a] motion to dismiss properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted.)Gurliacci v. Mayer, 218 Conn. 531, 544, 590 A.2d 914 (1991). "A motion to dismiss tests . . . whether, on the face of the record, the court is without jurisdiction." Upson v. State, 190 Conn. 622, 624, 461 A.2d 991
(1983). See also Practice Book § 10-31. "When the constitutionality of a statute implicates the jurisdiction of the court . . . a motion to dismiss may properly serve as a vehicle for presenting such an issue."Chotkowski v. State, 13 Conn. 13, 19 n. 8, 566 A.2d 419 (1989).
Under the doctrine of sovereign immunity, the state is immune from suit unless through appropriate legislation it consents to be sued. See, e.g., Federal Deposit Ins. Corp. v. Peabody, N.E., Inc., 239 Conn. 93,101, 680 A.2d 1321 (1996); Bresnan v. Frankel, 224 Conn. 23, 25,615 A.2d 1040 (1992); White v. Burns, 213 Conn. 307, 312, 567 A.2d 1195
(1990). "[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." (Internal quotation marks omitted.) Federal Deposit Ins. Corp. v.Peabody, N.E., Inc., supra, 239 Conn. 99; Novicki v. New Haven,47 Conn. App. 734, 739, 709 A.2d 2 (1998). The relevant case law requires the complaint to allege facts showing an exception to the applicability of the doctrine of sovereign immunity. Tamm v. Burns, 222 Conn. 280,284, 610 A.2d 590 (1992). Thus in determining whether sovereign immunity serves to bar a plaintiff's cause of action, the court must focus on the adequacy of the allegations set forth in the complaint. Amore v.Frankel, 29 Conn. App. 565, 569, 616 A.2d 1152 (1992). While doing so, "the court, in deciding a motion to dismiss must consider the allegations of the complaint in their most favorable light." (Internal quotation marks omitted.) Savage v. Aronson, 214 Conn. 256, 264, 571 A.2d 696
(1990). See also Pamela B. v. Ment, 244 Conn. 296, 308, 709 A.2d 1089
(1998) ("What is necessarily implied [in an allegation] need not be expressly alleged."). CT Page 7528
 III LEGISLATURE'S COMPLIANCE WITH § 4-159
In support of the motion to dismiss, the defendant first claims that SJHR-47 is fatally flawed through its lack of a finding of statement that the plaintiff's suit would be "just and equitable," as such language is required by General Statutes § 4-159.[4] The defendant further argues that SJHR-47 must fail because it does not "provide that the claim presents `an issue of law or, fact under which the state, were it a private person, could be liable.'" Defendant's Memorandum of Law (#107). The plaintiff responds that § 4-159 does not require specific factual findings. The court finds this issue in favor of the plaintiff.
This aspect of the state's motion to dismiss involves the interpretation of Public Act 90-284, which amended General Statutes § 4-159. Although the state has cited no case law in support of its proposed interpretation, the court is guided by the clear language of the statute involved. The General Assembly is presumed to have acted in compliance with the governing legislation. Chotkowski v. State,240 Conn. 246, 263, 690 A.2d 368 (1997) (Chotkowski III). Compliance with the text of § 4-159 necessarily contemplates the legislature's consideration of the factual basis underlying the claim presented to the Commissioner, and the exercise of its discretion in granting permission to sue notwithstanding the Commissioner's denial of that opportunity. In accordance with the amendment to § 4-159 provided through P.A. 90-284, specific standards were enacted for the General Assembly to apply when granting permission to sue the state.[5] That standard implicitly requires the legislature to acquire a basis for deeming it just and equitable before permission to sue the state is granted to a claimant, and that the legislature acquire a basis for believing the presented claim to present an issue of law or fact under which the state, were it a private person, could be liable. Section 4-159. This protocol added to § 4-159 in 1990 effectively utilizes the same time-honored standard which is employed by the claims commissioner in determining whether it is just and equitable that a suit be brought, pursuant to § 4-160(a) and (c).[6]
The defendant argues that SHJR-47 must fail because it contains "no finding or even a statement" expressly acknowledging that the legislature has fulfilled its obligation to honor the standard expressed in §4-159. Acceptance of the defendant's position would compel the court to layer a new obligation upon the clear text of § 4-159. In addition to considering the recommendation and coming to a determination based upon the specified standards, the defendant would require the General Assembly to use specific designated language when publishing its rejection of a CT Page 7529 position taken by the Claims Commissioner. Neither the text nor the spirit of the statute requires the legislature to do anything other than employ, in its deliberation process, the precise enacted standard when evaluating a request for granting permission to bring suit.[7]
Here, as in other contexts, "the absence of any magic words is not dispositive." O'Reilly v. General Dynamics Corporation, 52 Conn. App. 813, 181, 728 A.2d 527 (1999). See also State v. Toth, 29 Conn. App. 843,852, 617 A.2d 536 (1993) and State v. Barton, 219 Conn. 529, 549,594 A.2d 917 (1991) (finding of probable cause from warrant affidavit is not dependent upon the incantation of magic words); ManchesterEnvironmental Coalition v. Stockton, 184 Conn. 51, 73, 441 A.2d 68 (1981) (trial court's failure to use magic words "prima facie case" or "sufficiently rebutted" are implicit in decisions findings and conclusions). In publishing SHJR-47, the legislature has fully and fairly complied with the textual requirements of § 4-159, thus providing an effective waiver of suit in this matter pursuant to § 4-160(c), which expressly contemplates the bringing of actions against it upon the authorization "by the Claims Commissioner pursuant to subsection (a) or (b) of this section or by the General Assembly pursuant to section4-159."[8] (Emphasis added.) Under these circumstances, the defendant has failed to demonstrate legal defect in SHJR-47, which effectively establishes its consent to be sued, and therefore the state cannot prevail on this issue.
 IV CONSTITUTIONAL VALIDITY OF SHJR-47
The defendant next claims that SHJR-47 is constitutionally invalid in that it presents an exclusive public emolument, barred by Article first, Sec. 1 of the Connecticut Constitution. The plaintiff counters that SHJR serves a legitimate public purpose, such that this constitutional challenge must be rejected. For the following reasons, the court finds this matter in favor of the plaintiff.
It is axiomatic that "[c]onstitutional issues are not considered unless absolutely necessary to the decision of a case . . . or unless sufficient public interest warrants such a review." (Citation omitted.) Chotkowskiv. State, 213 Conn. 13, 16-17, 566 A.2d 419 (1989) (Chotkowski II). In the present case, the constitutionality of SHJR-47 is dispositive of the outcome of the present motion to dismiss. Accordingly, this court must address the defendant's argument that SHJR-47 grants the plaintiff an exclusive public emolument in violation of Article first, § 1 of the Connecticut Constitution. In this review, the court is mindful that "`legislative enactments carry with them a strong presumption of CT Page 7530 constitutionality, and that a party challenging the constitutionality of a validly enacted statute bears the heavy burden of proving the statute unconstitutional beyond a reasonable doubt.' Beccia v. Waterbury,192 Conn. 127, 133, 470 A.2d 1202 (1984); see also Faraci v. ConnecticutLight Power Co., 211 Conn. 166, 168, 558 A.2d 234 (1989)." ChotkowksiIII, supra, 240 Conn. 257-58. "Proper respect for a coordinate branch of government requires that every presumption must be made in favor of validity and that an act must be sustained unless its invalidity is established beyond a reasonable doubt." (Citations omitted.) Maisonettev. Hartford Housing Authority, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 545863 (December 4, 1996,Lavine, J.). The Superior Court "should be exceedingly reluctant to override the legislature's conclusion and should uphold an act if it can be supported on any reasonable ground, either express or apparent." (Citations omitted; emphasis added.) Maisonette v. Hartford HousingAuthority, supra, Docket No. 545863.
 A. SCOPE OF REVIEW
While the Superior Court does not have jurisdiction to review decisions of the claims commissioner, "[t]he commissioner of claims performs a legislative function directly reviewable only by the General Assembly."Circle Lanes of Fairfield, Inc. v. Fay, 195 Conn. 534, 541, 489 A.2d 363
(1985). See also Cooper v. Delta Chi Housing Corp., 41 Conn. App. 61,64, 674 A.2d 858 (1996). This court does, however, have jurisdiction to review the constitutionality of special acts of the General Assembly. See, e.g., Merly v. State, 211 Conn. 199, 558 A.2d 977 (1989).
Article first, § 1, of the Connecticut Constitution reads: "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community." "[The Connecticut Supreme Court] has construed the provision of article first, § 1, prohibiting exclusive public emoluments or privileges to apply to legislation preferring certain individuals over others when wholly unrelated to the public interest. No enactment creating a preference can withstand constitutional attack if the sole objective of the General Assembly is to grant personal gain or advantage to an individual. Its validity is contingent, at least in part' upon its furthering a public purpose; if enacted with that end in view, legislation can be sustained even though it may incidentally confer a direct benefit upon an individual or a class. Only if an act serves some public purpose can it be constitutionally sufficient." (Citations omitted; emphasis added; internal quotation marks omitted.) Merly v.State, 211 Conn. 199, 212-13, 558 A.2d 977 (1989). Our courts have long acknowledged that "if legislation directs the granting of an emolument or privilege to an individual or class without any purpose, expressed or CT Page 7531 apparent, to serve the public welfare thereby, the courts have a duty to declare such legislation unconstitutional." Fennel v. City of Hartford,238 Conn. 809, 828, 681 A.2d 934 (1996), citing Warner v. Gabb,139 Conn. 310, 313, 93 A.2d 487 (1952). The court's obligation in evaluating such matters was more recently affirmed: "`[W]e are not to assess [the constitutionality of an act] in the light of what we think of the wisdom and discernment of the law-making body in the particular instance. Rather we are bound to approach the question from the standpoint of upholding the legislation as a valid enactment unless there is no reasonable ground upon which it can be sustained.'. . . . In other words, if we can discern `any conceivable justification for [the]challenged legislation from the public viewpoint'; Merly v. State,211 Conn. 199, 205, 558 A.2d 977 (1989); we are bound to uphold it against a constitutional challenge predicated on article first, § 1." (Emphasis added; citations omitted; brackets in the original.) ChotkowskiIII, supra, 240 Conn. 257. Chotkowski III also emphasizes that in bringing a motion to dismiss, the movant bears the burden of proving that only an invalid purpose can be attributed to the legislative act at issue. Chotkowski III, supra, 240 Conn. 257.
The constitutionality of the special act in the present case thus rests on whether SHJR-47 serves some cognizable public purpose. "The modern trend, both in Connecticut and in other states with similar constitutional provisions, has been to expand and construe broadly the meaning of `public purpose' . . . [T]he concept expands with the population, economy, scientific knowledge, and changing conditions . . . Generally, if an act will promote the welfare of the state, it serves a public purpose. In deciding whether an act serves such a purpose this court has traditionally vested the legislature with wide discretion and suggested the latter's determination should not be reversed unless manifestly and palpably incorrect." (Citations omitted; internal quotation marks omitted.) Estate of Abair v. UConn Health Ctr., Superior Court, Docket No. CV96-0565152, judicial district of Hartford (Feb. 24, 1997, Hennessey, J.). See also Chotkowski III, supra, 240 Conn. 259.[9]
It is also fundamental that "[w]hether [an Act] does serve such a purpose rests in the sound judgment of the legislature, and the courts should not override the legislature's conclusion if it can be supported on any reasonable ground." Warner v. Gabb, supra, 139 Conn. 313. Thus, "an enactment will be deemed to serve a valid public purpose, even though it confers a direct benefit upon a particular individual, if it remedies an injustice done to that individual for which the state itself bears responsibility." Sanger v. Bridgeport, 124 Conn. 183, 189, 198 A. 746
(1938); see also Chotkowski II, supra, 213 Conn. 18; Merly v. State, supra, 211 Conn. 213-14; Vecchio v. Sewer Authority, 176 Conn. 497,506-507, 408 A.2d 254 (1979); Hillier v. East Hartford, 167 Conn. 100,108-109, 355 A.2d 1 (1974). "In such circumstances, the benefit conferred CT Page 7532 upon a private party by the legislature may be viewed as incidental to the overarching public interest that is served in remedying an injustice caused by the state." Chotkowski III, supra, 240 Conn. 260.
 B. PUBLIC PURPOSE OF SHJR-47
Upon review, the court has determined that a reasonable public purpose is served by SJHR-47 as passed on April 8, 1998. As there exists a reasonable ground upon which this act can be sustained, SHJR-47 passes constitutional muster. Chotkowski III, supra, 240 Conn. 257, citing Merlyv. State, supra, 211 Conn. 205. While allowing the plaintiff to pursue a legal claim in the matter at hand, the act serves to remedy a grave injustice perpetrated by the defendant's action, inaction, or disinterest, and thus serves a public purpose by remedying a situation that is rationally seen as the equitable responsibility of the state of Connecticut.[10] Sanger v. Bridgeport, supra, 124 Conn. 189; see alsoChotkowski III, supra, 240 Conn. 260.
This public purpose is derived from the extraordinary factual circumstances which directly gave rise to this case on January 7, 1991, circumstances which had been known to exist for far too long before March Vogel sustained her tragic injuries. As noted in Part I, above, prior to considering the act at issue, the legislature received information related to the plaintiff's individual situation. Prior to issuing its unanimous votes, the members of the General Assembly thus were thoroughly advised of the facts, events, and trauma that had befallen other citizens as the result of uncorrected elements related to the overpass structure.[11] Both Representative Lawler and Representative Sawyer specifically acknowledged the long enduring severity of the situation, and promoted the act as a necessary response to a public need for governmental accountability in such situations. The legislative history and discussion of the proposed act thus provide an adequate basis for the inference that, in passing SHJR-47, the members of the General Assembly were well aware of the long-standing dangers posed by the unremedied overpass in question, and well informed of the state's extended delay in attending to that condition. "Indeed, because the testimony in support of [SHJR-47] focused solely upon the alleged merit of the plaintiff's claim against the state . . . we must presume that the enactment of [SHJR-47] was predicated on that information" concerning the distressing circumstances at issue in this case. See Chotkowski III, supra, 240 Conn. 263
and n. 2.
Given the liberal construction of the term "public purpose" and the deference given to the legislature's decisions, the public purpose underlying SHJR-47 becomes clear and apparent: when, despite repeated CT Page 7533 warnings, the state fails to adequately correct a long known and dangerous condition which continues to contribute to the suffering of its citizens, the state will not hide behind the shield of sovereign immunity, but will expose itself and acknowledge its liability, as a private landowner would, and accept responsibility for its egregious acts or omissions. Thus, SHJR-47 directs the claims commissioner's inquiry, in the present and future cases, to the factors which may, or may not, establish the state's historical pattern of failed responses to obvious roadway hazards. A corollary public purpose is seen in the legislature's tacit promotion of the public's ability to rely on the state's obligation to respond and provide a timely remedy, when the existence of abhorrent highway conditions is repeatedly brought to the state's attention. Given such implicit directive to the commissioner, based upon the specific facts presented, the public purpose behind the present special act cannot be merely "to see that justice is done in this particular case."Maisonette v. Hartford Housing Authority, supra, Docket No. 545863.
While the defendant relies upon a series of decisions in which a legislative act has been found unconstitutional, in violation of Article first, § 1, none of these matters have involved the deplorable and repetitive behaviors which are the subject of this case. Rather than addressing prolonged inattention or apathy toward a serious public hazard, as is the subject of the state's conduct in the present matter, those other cases have turned on whether a statute of limitations was made void in favor of a single individual,[12] where a single act or omission resulted in injury,[13] or where action not against the state but against a municipality or political subdivision is contemplated.[14]
For these reasons, the court finds the defendant's construction of these cases to be inapposite and unavailing in the present matter. It also is worthy of note that while the General Assembly has specifically codified the immunity from suit afforded to municipalities and political subdivisions, through its 1986 enactment of General Statutes § 52-577n(a) and (b),[15] this legislation does not address, in any way, restrictions to be imposed upon the state of Connecticut in permitting itself to be the subject of suit by its citizens. The limiting provisions of § 52-577n must be read in the context of the permissive aspects of the previously enacted § 4-159, through which the legislature had provided a specific protocol for waiver of the protection of sovereign immunity when allowing suit to be brought against itself. From this, the court concludes that notwithstanding the implications of tort reform, our legislature has expressed a clear intention that, when necessary and appropriate, as to redress protracted disinterest in correcting an overtly dangerous condition, suit may be brought.
The court will properly ratify special acts which are issued in response to "`strong equitable grounds for legislative interference,'" CT Page 7534 such as those at issue in this case. Chotkowski III, supra, 240 Conn. 261, citing Sanger v. Bridgeport, supra, 124 Conn. 189. The fact that the General Assembly has not specifically stated the public purpose behind SHJR-47 does not render the act ineffective or invalid. "[A legislative enactment] is not unconstitutional by reason of the fact that the purpose is not spelled out with clarion specificity." Roan v. Conn. IndustrialBuilding Comm., 150 Conn. 333, 340, 189 A.2d 399 (1963). Similarly, legislation which grants to a designated person privileges greater than those sought by the public at large is, of course, not necessarily violative of the constitution. If such a grant serves a public purpose, the fact that it is so limited does not render it invalid. See Warner v. Gabb, supra, 139 Conn. 313; Estate of Abair v. UConn Health Ctr., supra, Docket No. CV96-0565152; Maisonette v. Hartford Housing Authority, supra, Docket No. 545863.
Considering the allegations of the complaint in their most favorable light, as it must, and noting the express reference to SHJR-47 set forth in both the first and second counts, the court Savage v. Aronson, supra,214 Conn. 264; Pamela B. v. Ment, supra, 244 Conn. 308, the court finds that although raising a vigorous challenge to the presumption that SHJR-47 is constitutional as enacted, the defendant has not met its "heavy burden of proving the statute unconstitutional beyond a reasonable doubt." Breccia v. Waterbury, supra, 192 Conn. 133; see also ChotkowskiIII, supra, 240 Conn. 257-58. Accordingly, the defendant cannot prevail on this issue.
 V CONCLUSION
In light of the noted legitimate public purpose underlying the enactment of SHJR-47, the court concludes that this act does not constitute an exclusive public emolument prohibited by article first, § 1, of the Connecticut constitution. Furthermore, in view of SHJR-47's noted compliance with § 4-159, the court finds that the state has tendered a valid and constitutional consent to suit. Accordingly, the defendant's motion to dismiss the plaintiff's action is hereby
DENIED.
BY THE COURT,
N. Rubinow, J.