[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTION TO DISMISS (#102)
 I
CT Page 6385 FACTS
This action arises from injuries caused by the alleged failure of the defendant, the state of Connecticut (state), to inform the plaintiff, Roger J. Harris, D.D.S., before he operated on an individual (the patient) that said patient, a ward of the state and residing at the Seaside Regional Center (Seaside), had hepatitis B. As a result of the defendant's alleged negligence, the plaintiff unknowingly was infected with hepatitis B from the patient.
The following background facts, as represented by the parties in their respective memoranda and exhibits thereto, are not in dispute for the purposes of the present motion. On March 20, 1978, the plaintiff performed oral surgery on the patient. In August of 1979, the plaintiff learned that he had contracted hepatitis B and through his practice of dentistry transmitted the disease to several of his own patients. Consequently, in September of 1979, the plaintiff voluntarily surrendered his license. Thereafter, on March 18, 1980, the dental commission suspended his license to practice until he no longer posed a threat of transmission.
In the summer of 1982, the plaintiff learned through a dental commission report that he had likely contracted hepatitis B from the patient he treated at Seaside. At that time, the plaintiff did not file a notice of claim with the claims commissioner because he believed that it was too late to seek redress. In 1984, however, the plaintiff met with Senator Mary Martin and discussed the possibility of filing a late notice of claim with the office of the claims commissioner. Shortly thereafter, Senator Martin introduced, and the General Assembly subsequently passed, Special Acts 1985, No. 85-29,[1] on March 16, 1985, authorizing the plaintiff to file his notice of claim (original claim) with the office of the claims commissioner, which he did on April 30, 1986.
Subsequent to the passage of S.A. 85-29, the Connecticut Supreme Court issued two opinions,[2] which declared the procedure followed by the General Assembly for the waiver of late claims unconstitutional. In response, the General Assembly passed Public Acts 1990, No. 90-284, which established new constitutional standards for the waiving of time limitations pursuant to General Statutes § 4-140 (a). During this time, the plaintiffs original claim was not decided by the claims commissioner.
In April of 1993, the plaintiff appeared before the General Assembly again, and this time the General Assembly passed Special Acts 1993, No. 93-16, § (a),[3] in compliance with the new legislative standards set forth in P.A. 90-284. Pursuant to S.A. 93-16, the claims commissioner on February 19, 1998, commenced a formal hearing on the plaintiffs CT Page 6386 original claim. On June 22, 1998, pursuant to General Statutes § 4-160
(a)[4] and S.A. 93-16, the claims commissioner granted the plaintiffs request for permission to sue the defendant. Accordingly, on June 23, 1999, the plaintiff commenced this action with the Superior Court.
On August 12, 1999, the plaintiff amended his complaint by attaching a copy of the claims commissioner's decision. The amended complaint alleges the following facts. On March 20, 1978, the plaintiff operated on the patient's teeth and, thus, by virtue of exposure to the patient's blood and saliva, the plaintiff became infected with hepatitis B. The state, through its department of mental retardation (DMR), controlled and operated Seaside. DMR employees knew or should have known that the patient was an infectious carrier of hepatitis B, and should have advised the plaintiff of such information.
The state's department of health services (DHS) identified the plaintiff as a carrier of hepatitis B. Thereafter, the state's dental commission found the plaintiff to be medically unfit to practice dentistry and suspended his license for over five years, the period of time during which he remained infectious. As a result of his license suspension, the plaintiff had to close his dental practice and, thus, he sustained further financial losses. In addition, several of the plaintiffs patients contracted hepatitis B from him and sued him. Moreover, the plaintiff suffered emotionally and physically from the disease and incurred medical costs for hepatitis B treatment.
The plaintiffs infection with hepatitis B, license suspension and financial losses were due to the state's negligence, through DMR, in failing to do the following: warn the plaintiff of the patient's hepatitis B status, screen the patient for infectious disease, submit the patient to infectious disease exams, maintain and update the patient's medical records, procure the patient's viral test results, appoint a guardian to monitor the patient's treatment, minimize the risk of the patient transmitting the disease to others, provide the plaintiff with the patient's complete medical history and records, and train DMR staff in assessing, monitoring and advising the plaintiff and others of the patient's health risks.
On September 13, 1999, the defendant filed a motion to dismiss the action on the ground that the court lacks jurisdiction over the subject matter. According to the defendant, S.A. 93-16 is an unconstitutional exclusive public emolument or privilege, the plaintiff failed to file a new notice of claim pursuant to General Statutes § 4-147[5] and S.A. 93-16, thereby depriving the commissioner of jurisdiction to hear the plaintiffs claim, and the commissioner's waiver of the state's sovereign immunity is invalid because it permits the plaintiff to sue on CT Page 6387 an alternative cause of action not authorized by S.A. 93-16. In support of its motion, the defendant submitted a memorandum of law, copies of the plaintiffs letter of claim to the commissioner, the commissioner s decision, legislative history of S.A. 93-16, testimony of the plaintiff and his attorney to the judiciary, the dental commission's decision, and the plaintiffs cross-examination testimony before the commissioner. On November 13, 2000, the plaintiff filed an objection to the motion to dismiss and submitted a memorandum of law in support thereof, copies of S.A. 85-29 and S.A. 93-16, an affidavit, medical records, reports, test results and the commissioners decision. This court heard oral argument on January 29, 2002.
 II STANDARD OF REVIEW
Practice Book § 10-31 states that "[t]he motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter. . . ." (Internal quotation marks omitted.) Shay v. Rossi, 253 Conn. 134, 140 n. 8, 749 A.2d 1147 (2000). "[I]n ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) Lawrence Brunoli, Inc. v. Branford,247 Conn. 407, 410-11, 722 A.2d 271 (1999). "The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone. . . ." (Internal quotation marks omitted.) Ferreira v. Pringle, 255 Conn. 330, 346, 766 A.2d 400 (2001). "The plaintiff bears the burden of proving subject matter jurisdiction, whenever and however raised." Fink v. Golenbock, 238 Conn. 183, 199 n. 13, 680 A.2d 1243 (1996).
"[A] claim that [the] court lacks subject matter jurisdiction [may be raised] at any time." (Internal quotation marks omitted.) Dowling v.Slotnick, 244 Conn. 781, 787, 712 A.2d 396, cert. denied, 525 U.S. 1017,119 S.Ct. 542, 142 L.Ed.2d 451 (1998). "[O]nce the question of lack of [subject matter] jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) Community Collaborative of Bridgeport, Inc. v. Ganim,241 Conn. 546, 552, 698 A.2d 245 (1997). "[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." (Internal quotation marks omitted.)Federal Deposit Ins. Corp. v. Peabody. N.E., Inc., 239 Conn. 93, 99,680 A.2d 1321 (1996). CT Page 6388
 A Constitutional Validity of S.A. 93-16
The defendant first argues that S.A. 93-16, which gives the plaintiff permission to file a notice of claim with the claims commissioner, is an unconstitutional exclusive public emolument or privilege proscribed by article first, § 1, of the constitution of Connecticut.[6] The plaintiff counters that S.A. 93-16 serves a legitimate public purpose, such that the defendant's constitutional challenge must be rejected.
It is axiomatic that "[c]onstitutional issues are not considered unless absolutely necessary to the decision of a case . . . or unless sufficient public interest warrants such a review." (Internal quotation marks omitted.) Chotkowski v. State, 213 Conn. 13, 16-17, 566 A.2d 419 (1989). In the present case, the constitutionality of S.A. 93-16 is dispositive of the outcome of the defendant's motion to dismiss. In reviewing the defendant's motion to dismiss, this court is mindful that "legislative enactments carry with them a strong presumption of constitutionality, and that a party challenging the constitutionality of a validly enacted [legislative act] bears the heavy burden of proving the [legislative act] unconstitutional beyond a reasonable doubt." Beccia v. Waterbury,192 Conn. 127, 133, 470 A.2d 1202 (1984). "[P]roper respect for a coordinate branch of government requires the exercise of caution in adjudicating constitutional challenges to legislation." Serrano v. AetnaIns. Co., 233 Conn. 437, 448 n. 13, 664 A.2d 279 (1995).
 1 Scope of Review
Our Supreme Court has "construed the provision of article first, § 1 prohibiting `exclusive public emoluments or privileges' to apply to legislation preferring certain individuals over others when wholly unrelated to the public interest." Merly v. State, 211 Conn. 199, 212,558 A.2d 977 (1989). "No enactment creating a preference can withstand constitutional attack if the sole objective of the General Assembly is to grant personal gain or advantage to an individual. Its validity is contingent, at least in part, upon its furthering a public purpose; if enacted with that end in view, legislation can be sustained even though it may incidentally confer a direct benefit upon an individual or a class. . . . Only if an act serves some public purpose can it be constitutionally sufficient." (Citation omitted; internal quotation marks omitted.) Id., 212-13. Our Supreme Court has long acknowledged that "if legislation directs the granting of an emolument or privilege to an individual or class without any purpose, expressed or apparent, to serve CT Page 6389 the public welfare thereby, the courts have a duty to declare such legislation unconstitutional." Warner v. Gabb, 139 Conn. 310, 313,93 A.2d 487 (1952). Therefore, in considering such matters, if a court is able to "discern any conceivable justification for [the] challenged legislation from the public viewpoint . . . [it is] bound to uphold [the legislation] against a constitutional challenge predicated on article first, § 1." (Citation omitted; internal quotation marks omitted.)Chotkowski v. State, 240 Conn. 246, 259, 690 A.2d 368 (1997).
 2 Public Purpose of S.A. 93-16
The constitutionality of S.A. 93-16 depends on whether it serves a cognizable public purpose. "The modern trend, both in Connecticut and in other states with similar constitutional provisions, has been to expand and construe broadly the meaning of public purpose. . . . Generally, if an act will promote the welfare of the state, it serves a public purpose. . . . In deciding whether an act serves such a purpose [the Supreme Court] has traditionally vested the legislature with wide discretion and suggested that the latter's determination should not be reversed unless manifestly and palpably incorrect." (Citations omitted; internal quotation marks omitted.) Wilson v. Connecticut ProductDevelopment Corp. , 167 Conn. 111, 115, 355 A.2d 72 (1974). "Whether [an act] does serve such a purpose rests in the sound judgment of the legislature, and the courts should not override the legislature's conclusion if [it] can be supported on any reasonable ground." Warner v.Gabb, supra, 139 Conn. 313. Thus, "an enactment will be deemed to serve a valid public purpose, even though it confers a direct benefit upon a particular individual, if it remedies an injustice done to that individual for which the state itself bears responsibility." Chotkowski v. State, supra, 240 Conn. 260, citing Sanger v. Bridgeport, 124 Conn. 183, 189,198 A. 746 (1938).
In the present case, given the liberal construction of the term "public purpose" and the deference given to the legislature's decisions, this court finds that the General Assembly's underlying purpose in passing S.A. 93-16 served to remedy a grave injustice perpetrated by the defendant's negligence and carelessness and, therefore, remedies a situation that is rationally viewed as the equitable responsibility of the state. Specifically, S.A. 93-16 ensures proper medical care for wards of the state by assuring medical providers that they will receive complete medical histories and, further, be informed of any health risks that such persons may pose.
"Legislation which grants to a limited class emoluments or privileges CT Page 6390 greater than those allowed to the public at large is, of course, not necessarily violative of the constitution. If such a grant serves a public purpose, the fact that it is so limited does not render it invalid." Warner v. Gabb, supra, 139 Conn. 313. In considering the alleged facts in the case at bar, the public purpose underlying S.A. 93-16 becomes clear and apparent: allegedly, when, despite prior receipt of medical records stating that the patient was a carrier of hepatitis B, the state failed to warn or advise the plaintiff of the patient's medical history and the health risks that he posed. As a result of the state's alleged negligence and carelessness, the plaintiff unknowingly contracted hepatitis B and by virtue of his practice of dentistry, thereby unknowingly infected several other patients with the disease. Special Act 93-16 remedies the suffering of the citizenry by exposing the state to suit, thereby requiring acknowledgment of its liability and acceptance of its responsibility for its negligent acts and omissions. Thus, given the implicit directive to the commissioner, based upon the specific facts presented, the public purpose behind S.A. 93-16 cannot be merely to see that justice is done in this particular case.
 B Timeliness of the Plaintiffs Notice of Claim Pursuant to S.A. 93-16
The defendant next argues that S.A. 93-16 expressly required the plaintiff to file a new notice of claim with the office of the claims commissioner by October 1, 1993. In support of its contention, the defendant notes the language of S.A. 93-16, § (a), which states in relevant part: "Dr. Roger J. Harris is authorized to present his claim against the state to the claims commissioner, provided that he files a notice of such claim with the clerk of the office of the claims commissioner in accordance with section 4-147 of the general statutes not later than October 1, 1993." The defendant argues that the plaintiff did not file a new notice of claim and, thus, the commissioner improperly relied upon the plaintiffs original claim filed on April 30, 1986, in granting the plaintiff permission to sue the state. In response, the plaintiff argues that S.A. 93-16 does not expressly require the plaintiff to file a new notice of claim with the office of the claims commissioner. Rather, the plaintiff presents that his original notice of claim meets the timeliness requirements of S.A. 93-16 and, thereby, confers jurisdiction on the claims commissioner to hear his claim. Moreover, the plaintiff argues that S.A. 93-16 bars the state from requiring the plaintiff to comply with the provisions of General Statutes §§ 4-147 and 4-148, including a timely request for permission to sue the state.
"In Connecticut, we have long recognized the validity of the common-law CT Page 6391 principle that the state cannot be sued without its consent. . . ." Hortonv. Meskill, 172 Conn. 615, 623, 376 A.2d 359 (1977). "[T]he sovereign is immune from suit unless the state, by appropriate legislation, consents to be sued." (Internal quotation marks omitted.) Federal Deposit Ins.Corp. v. Peabody, N.E., Inc., supra, 239 Conn. 101. The state may consent to suit either through a statutory waiver of sovereign immunity or through its claims commissioner. See Krozser v. New Haven, 212 Conn. 415,421, 562 A.2d 1080 (1989), cert. denied sub nom. Krozser v. Connecticut,493 U.S. 1036, 110 S.Ct. 757, 107 L.Ed.2d 774 (1990).
General Statutes § 4-160 (a) stipulates: "When the Claims Commissioner deems it just and equitable, he may authorize suit against the state on any claim which, in his opinion, presents an issue of law or fact under which the state, were it a private person, could be liable." In addition, General Statutes § 4-147 states in relevant part: "Any person wishing to present a claim against the state shall file with the clerk of the Office of the Claims Commissioner a notice of claim. . . ." Lastly, General Statutes § 4-148 (a) mandates that "[e]xcept as provided in subsection (b) of this section, no claim shall be presented under this chapter but within one year after it accrues." For those claimants who fail to meet the requirements set out in § 4-148 (a), § 4-148 (b) provides them with a possible alternative avenue of relief. General Statutes § 4-148 (b) provides that "[t]he General Assembly may, by special act, authorize a person to present a claim to the Claims Commissioner after the time limitations set forth in subsection (a) . . . have expired if it deems such authorization to be just and equitable and makes an express finding that such authorization is supported by compelling equitable circumstances and would serve a public purpose."
In the present action, the state does not retain sovereign immunity because S.A. 93-16 waived the statutory time period during which the plaintiff could file his claim with the commissioner and, therefore, allowed the plaintiff to present his claim against the state to the claims commissioner no later than October 1, 1993. By its express terms, S.A. 93-16 does not require the plaintiff to file a new notice of claim with the office of the claims commissioner. It rationally can be deduced that had the plaintiff wanted to assert additional facts or a new cause of action, other than what he had already stated in his original claim, S.A. 93-16 allowed him to do so, as long as such claim was filed no later than October 1, 1993. Consequently, because the plaintiff did not seek to allege a new cause of action, his original claim as filed with the commissioner on April 30, 1986, was timely and, thus, the commissioner properly had jurisdiction over the plaintiffs claim and appropriately waived the state's sovereign immunity. After the commissioner consented to suit, this court was properly vested with jurisdiction over the CT Page 6392 subject matter of the plaintiffs action. Accordingly, the plaintiffs claim against the state does not fail as a matter of law.
 C A New Cause of Action
Lastly, the defendant seeks to dismiss the plaintiffs suit on the ground that the assertion of a new cause of action within the plaintiffs amended complaint is not authorized by S.A. 93-16. The defendant argues that the plaintiff is precluded from pursuing his claim on an allegation that Seaside officials "knew or should have known" of the fact that the patient was infected with hepatitis B, because the plaintiffs testimony to the General Assembly and the terms of S.A. 93-16 state only that Seaside officials "knew" of the patient's disease. The defendant argues that an allegation of "knew or should have known" rather than "knew" states a new cause of action and, as such, the claims commissioner incorrectly granted suit on this new cause of action that was not provided for by S.A. 93-16. Therefore, the defendant maintains that the claims commissioner s waiver of immunity is invalid and, thus, this court lacks jurisdiction over the subject matter of the present suit.
In response, the plaintiff argues that the allegation in question arises from the same set of facts presented to the general assembly and the claims commissioner. In addition, the plaintiff maintains that by including the assertion that the defendant "knew or should have known" of the patient's hepatitis B status does not constitute an expansion of his claim. Furthermore, the plaintiff avers that in his original claim to the claims commissioner, he included the allegation that the state "should have known" of the patient's hepatitis B condition and, therefore, his cause of action is properly asserted.
"The test for determining whether or not a new cause of action has been alleged is somewhat nebulous." Jonap v. Silver, 1 Conn. App. 550, 556,474 A.2d 800 (1984). "A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief." (Internal quotation marks omitted). Gurliacci v. Mayer, 218 Conn. 531, 546-47, 590 A.2d 914
(1991). "A change in, or an addition to, a ground of negligence or an act of negligence arising out of the single group of facts which was originally claimed to have brought about the unlawful injury to the plaintiff does not change the cause of action. . . . It is proper to amplify or expand what has already been alleged in support of a cause of action, provided the identity of the cause of action remains substantially the same. . . ." (Internal quotation marks omitted.) Id., 547. "Where an entirely new and different factual situation is CT Page 6393 presented, however, a new and different cause of action is stated." Jonapv. Silver, supra, 1 Conn. App. 556.
In the case at bar, the plaintiffs allegation that Seaside officials "knew or should have known" of the patient's hepatitis B status is derived from the same set of facts as those contained in S.A. 93-16. The plaintiff is not seeking to introduce a new or separate cause of action than the one recognized by S.A. 93-16, that is, the negligence and carelessness of the state in failing to advise the plaintiff of the patient's hepatitis B disease. Moreover, the expansion of the plaintiffs allegation that Seaside officials "knew or should have known" did not change the identity of his cause of action. Finally, the claims commissioner specifically stated in his memorandum of decision that the just and equitable standard for authorizing suit against the state is "broad enough to accommodate [the plaintiffs] position that permission to sue should be granted if it is found that Seaside officials should haveknown that [the patient] was a hepatitis B carrier on the date of his treatment by Dr. Harris." In light of the case law and the claims commissioner's decision, the plaintiffs cause of action alleging that the defendant "knew or should have known" of the patient's infectious condition was properly asserted and now is appropriately before this court.
 III CONCLUSION
For the foregoing reasons, the defendant's motion to dismiss the plaintiffs amended complaint is denied.
 ___________________ D. Michael Hurley, Trial Referee